**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No. 1:21-cv-525**

| | | |
|---|---|---|
| SAFE HAVEN WILDLIFE REMOVAL AND PROPERTY MANAGEMENT EXPERTS, LLC, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **AMENDED COMPLAINT** |
| MERIDIAN WILDLIFE SERVICES, LLC, d/b/a MERIDIAN BIRD REMOVAL, INC. | ) ) ) | |
| | ) | |
| Defendant. | | |

COMES NOW Plaintiff, Safe Haven Wildlife Removal and Property Management Experts, LLC ("Safe Haven"), as a matter of right within 21 days of service of defendant's motion to dismiss, by and through counsel, and alleges and says as follows:

## THE PARTIES

1. Safe Haven is a limited liability company organized under the laws of the State of North Carolina with its principal place of business in Advance, North Carolina, which is within the Middle District.

2. Meridian Wildlife Services, LLC ("Meridian"), is a Virginia Company with its principal place of business in Christiansburg, Virginia.

## JURISDICTION AND VENUE

3. This is a complaint for patent infringement arising under 35 U.S.C. § 271 et. seq.

4. This Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and 1338.

5. Venue is proper in this District under 28 U.S.C. § 1400(b) because Meridian has committed acts of infringement in this District that infringe upon the patents at issue here. Furthermore, Meridian has engaged in tortious misconduct and has purposefully directed its activities to this state in this District and has purposefully availed itself in this jurisdiction.

6. To support the above allegation, Safe Haven offers a job posting accessed on May 18, 2021, showing Meridian advertising for employees to work in the Winston-Salem and Greensboro area. (EXHIBIT 1). Additionally, the "about us" section of Meridian's website claims to perform work in "more than thirty states." (EXHIBIT 2). Further, a map on Meridian's website of their service area delineates the entire state of North Carolina as an "available service area," as opposed to some states that have only a "service available with mobilization fee." (EXHIBIT 3).

## THE PATENTS-IN-SUIT

7. The patents at issue in this case are United States Patent No. 10,251,374 ("'374 Patent"), United States Patent No. 10,729,108 ("'108 Patent"), and United States Patent No. 11,064,683 ("'683 patent").

8. The '374 Patent is titled "Animal Relocation System and Method." The '374 Patent issued on April 9, 2019.

9. Safe Haven obtained ownership of the '374 Patent by assignment of the entire right, title, and interest in the '374 Patent from Derek Tolley on May 26, 2016, after the '374 application had been filed.

10. A true and correct copy of the '374 Patent is attached to this complaint. (EXHIBIT 4).

11. The '374 Patent relates to a process for removing birds, primarily, from indoor facilities. Specifically, the abstract defines the Patent as, "[a]n animal relocation system and method comprising a perimeter net system[,] a trapping net system, and a flushing device, wherein the flushing device channels the animal through the perimeter net system and into the trapping net."

12. The '108 Patent is titled "Animal Relocation System and Method." The '108 Patent issued on August 4, 2020.  It is also owned by Safe Haven.

13. A true and correct copy of the '108 Patent is attached to this complaint.  (EXHIBIT 5).

14. Safe Haven obtained ownership of the '108 Patent by assignment of the entire right, title, and interest to the '108 Patent from Derek Tolley's aforementioned assignment on May 26, 2016.

15. The '108 Patent relates to a process for removing birds, primarily, from indoor facilities. Specifically, the abstract defines the Patent as, "[a]n animal relocation system and method comprising a perimeter net system[,] a trapping net system, and a flushing device, wherein the flushing device channels the animal through the perimeter net system and into the trapping net."

16. The '683 Patent is titled "Animal Relocation System and Method."  The '683 Patent issued on July 20, 2021.  It is owned by Safe Haven.

17. A true and correct copy of the '683 Patent is Exhibit 14.

18. The entire right, title and interest to the '683 Patent was also assigned by Derek Tolley to Safe Haven on May 26, 2016.

## BACKGROUND

19. Safe Haven is a company that specializes in the safe, effective, and humane bird and wildlife removal solutions for facilities.

20. More colloquially, if a store, warehouse, restaurant, or any other facility has a bird fly into it, Safe Haven removes the bird, using the methods described in the '374 Patent, '108 Patent, and '683 Patent to humanely release the bird into the wild quickly, without injury to the bird or to anyone inside the building.

21. Historically, stores were not concerned about birds in their buildings. Stores would often shoot birds that were in a store after hours. That has changed in recent years. Federal and sometimes local laws now require more careful handling of animals, including the Retail Food Safety Initiative. Additionally, grocery stores now sell prepared food, such as salad bars, sushi bars, and fresh bakery items. Droppings or feathers contaminate those items. Safe Haven emerged as a leader in this new industry.

22. Derek Tolley was the inventor of the methods encompassed by the '374 Patent, '108 Patent, and '683 Patent. He invested significant time and resources into developing the methods encompassed by the '374 Patent, '108 Patent, and '683 Patent.

23. Derek Tolley obtained the '374 Patent to protect his proprietary interest in the methods described in the '374 Patent.

24. Derek Tolley obtained the '108 Patent to protect his proprietary interest in the methods described in the '108 Patent.

25. Derek Tolley obtained the '683 Patent to protect his proprietary interest in the methods described in the '683 Patent.

26. As was mentioned, Derek Tolley assigned his rights and interests in the three patents to Safe Haven.

27. The methods described in the '374 Patent, '108 Patent, and '683 Patent have been successful and provide an advantage to Safe Haven in the marketplace.

28. Meridian is a Safe Haven competitor.

29. Meridian learned of the methods that Derek Tolley and Safe Haven were using via the filings that led to the '374 Patent, '108 Patent, and '683 Patent with the United States Patent Office.

30. Immediately upon learning of the methods encompassed by the '374 Patent, '108 Patent, and '683 Patent, Meridian began using those methods, and has been using those methods in violation of the three aforementioned patents.

31. Meridian continues to this day to use the methods encompassed by the '374 Patent, '108 Patent, and '683 Patent, and their outlined operations of capturing wildlife from indoor facilities.

32. Meridian's current methods, including those methods upon which it is training its employees, directly interferes with and competes with the methods encompassed by the '374 Patent, '108 Patent, and '683 Patent.  Meridian claims on its website to have patented a method for capturing birds from facilities.  (EXHIBIT 6).  However, the methods it uses are actually those encompassed by the three aforementioned patents.

33. Safe Haven attempted to address Meridian's infringement of the '374 Patent via letter, dated May 21, 2019.  (EXHIBIT 7).

34. Meridian responded via letter on July 19, 2019.  (EXHIBIT 8).  That letter does not directly claim that Meridian is not infringing upon the '374 Patent.  Instead, the letter suggests that Derek Tolley, who had been an independent contractor and had performed some services

via contract with Meridian years ago, developed the '374 Patent in such a way as to vest ownership of the '374 Patent to Meridian, not Safe Haven.

35. As such, Meridian does not appear to be contesting validity or infringement, but rather merely ownership.

36. Upon information and belief, based upon this fallacious argument that somehow Meridian owns the '374 Patent, Meridian has made claims on its website that, as worded, imply that Meridian owns the '374, '108 and '683 patents.  For example, Meridian claims "[o]ur patented 'Bird-N-Free' capture system and process allows us to predictably remove birds from inside any facility."  (EXHIBIT 2).  Additionally, Meridian claims that they "have developed a patented 'Bird-N-Free' system and process that enables us to catch and remove birds from inside any facility."  (EXHIBIT 9).  The website also states they perform "[r]emoval using patented equipment and processes."  The way Meridian words the statement, it could be interpreted that the word patent is only modifying the *equipment*. However, it is worded in a way that is misleading so the average reader would believe Meridian has a patent it is using for *processes* for capturing birds, when it in fact is using Safe Haven's patented methods and processes.

37. There is no type of intellectual property contract, employment relationship, or any other act of contract or law that would vest ownership of the '374 Patent, '108 Patent, or the '683 Patent to Meridian.  Derek Tolley developed this method on his own, using years of research, case studies and experience, working on his own or as a contractor independently for other companies, and eventually as the owner and president of Safe Haven.

38. Meridian is currently using a perimeter net system and trapping net system to capture birds out of facilities, using a flushing device.

39. Prior to Meridian reading the '374 Patent and understanding Safe Haven's systems, Meridian used a system where a trapping net would be placed near the bird and the individual operating the trapping net would track the bird through the store keeping the trapping net in close proximity to the bird to try to get the bird into the net.  By contrast, Safe Haven's system recognizes that a bird will fly to a corner or perimeter if it feels trapped because instinctively in the wild the bird would feel it would have fewer predators and less space to be concerned about if it is protected by the walls.  As such, the Safe Haven system directs the bird to the perimeter where there is a net, and then the Safe Haven technicians can shrink the area of the netting system until eventually the bird is in a very small area near the perimeter and is flushed into the net.

40. Safe Haven's system drastically reduces the time, effort, and disruption to the store or building operations while capturing the bird.  It also reduces the amount of bird droppings, feathers, etc. that could potentially contaminate the area.  Safe Haven's system has a higher capture rate and is more likely to allow the bird to leave the store or facility safely.

41. Meridian changed its system to use the perimeter net method described in the '374 Patent, '108 Patent, and '683 Patent and is now using Safe Haven's methods to compete in the marketplace.

42. Exhibit 10 is a photograph taken from social media showing a Meridian tech holding a bird.  In the background is a telescoping pole, with the pole attached to the net and the net attached to the structure at the perimeter.  It appears on Meridian's social media October 22, 2020.

43. Exhibit 11 is another picture of a Meridian tech.  In the background is a telescoping pole attached to the perimeter by rope at the bottom, extending to or near the ceiling.  It appears on Meridian's social media May 17, 2021; May 25, 2020; and July 8, 2019.

44. Exhibit 12 is another picture of a Meridian tech.  To the right of the picture (to the tech's left) are 4 ropes leading to the ceiling which are part of a net attaching to the ceiling.  It appears on Meridian's social media November 4, 2018.

45. The ropes seen in Exhibit 12 are attached to a trapping net, not a perimeter net.  It is not on the building's perimeter.

46. Exhibit 13 is another picture of a Meridian tech.  Behind him is a telescoping pole that appears to extend to or near the ceiling and be attached to the perimeter.  It appears on Meridian's social media December 21, 2020 and December 23, 2019.

47. These pictures depict Meridian using the methods encompassed by the '374, '108, and ;683 patents.

48. Confirming what the aforementioned photographs showed, Derek Tolley and one other Safe Haven employee witnessed and took videos of two Meridian workers catching a bird in public view in a Lowe's Store on September 17, 2021, Lowe's store number 1935 at 5750 Fruitville Road in Sarasota, Florida.

49. The videos Safe Haven took are extensive, but solely by way of example Safe Haven provides Exhibits 15-25 with some emphasis added in places.  These show that the workers are wearing Meridian shirts.  The pictures show the telescopic poles, hook, perimeter mist nets with an edge at or near the top of the ceiling, flushing device, and pulley system, among other things.

50. Safe Haven is not going to analyze each of these pictures, but it will highlight a few. Specifically, for the Court's reference, see Exhibit 16 depicting the pole Meridian was using in Sarasota.

51. Exhibit 19 shows the sack or bag being used at the end of the flushing device.

52. Exhibit 24 verified that the worker is working for Meridian.

53. Exhibit 25 shows the deployed mist perimeter net, poles, pulley and hook.

54. The Meridian workers in Sarasota used a perimeter net, two telescopic poles attached to the rafter or beams proximal to the ceiling.

55. Meridian's perimeter net used in Sarasota was a mist net.

56. The Sarasota workers attached the telescoping pole to a rafter or beam at the Lowe's using a hook.

57. The Meridian workers' poles contained two ends, a removable connector, a rope and pulley, and a cleat in Sarasota.  The first end was a hook.

58. The workers in Sarasota used a flushing device that appeared to be a plastic bag.  The worker referred to the bag as "scary bag man" which is a term that Derek Tolley specifically has used to describe the bag.

59. The Meridian workers in Sarasota attached the end of the perimeter net at or near the ceiling structure.

60. The Meridian workers attached the perimeter net so that it was proximal to the side of the Lowe's wall.

61. The Meridian workers in Sarasota attached the telescoping pole to the perimeter net.

62. The Meridian workers attached the telescoping pole to a rafter or beam proximal to the Lowe's ceiling.

9

63. The Meridian workers' telescoping pole in Sarasota contained a removable connector.

64. The Meridian workers in Sarasota used the flushing device to chase the bird toward the perimeter net.

65. Safe Haven also is informed and believes that Meridian has caused each of its employees and contractors to sign nondisclosure agreements to prevent discussion of Meridian's training and systems.  The Meridian policy of requiring nondisclosure agreements began after Meridian learned of Safe Haven's patents.

## COUNT 1: DIRECT INFRINGEMENT OF THE '374 PATENT

66. Safe Haven reincorporates the above referenced paragraphs and sets them forth fully herein.

67. In violation of 35 U.S.C. § 271, Meridian has infringed and continues to infringe, literally or under the doctrine of equivalence, at a minimum, Claims 6 and 7 of the '374 Patent.

68. Claim 6 reads: "An animal relocation system for relocating an animal in a structure, the system comprising a perimeter net; a trapping net wherein the trapping net comprises a first trapping net, a second trapping net, and a third trapping net; and a flushing device, wherein the flushing device is used to direct the animal into the trapping net."  (EXHIBIT 4).

69. Safe Haven witnessed infringement of Claim 6 in Sarasota, except that there were not trapping nets in use in Sarasota at that time.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

70. Additionally, Meridian is infringing Claim 7 of the '374 Patent, which reads: "The animal relocation system of claim 6, further comprising: the perimeter net comprising; a net and a

telescoping pole, the net attached to the telescoping pole and the telescoping pole attached to the structure." (EXHIBIT 4).

71.  Safe Haven witnessed infringement of Claim 7 in Sarasota, except that there were not trapping nets in use in Sarasota at that time.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

72. Meridian is infringing upon other claims of the '374 patent in such ways and manners as will be shown in discovery, similar to the infringement witnessed in Sarasota.

73. As has been discussed herein, Meridian is currently using a method of relocating animals within a structure using a perimeter net, a trapping net wherein the trapping net comprises the first trapping net, a second trapping net, and a third trapping net; and a flushing device, wherein the flushing device is used to direct the animal into the trapping net.  In fact, upon information and belief, Meridian is training its technicians, affiliates, and contractors to use this method – potentially because Meridian believes it actually owns the '374 Patent.

74. Additionally, Meridian is using an animal relocation system comprising of a perimeter net, a net and a telescoping pole, a net attached to the telescoping pole, and the telescoping pole attached to a structure.  This method was not used by Meridian until Meridian learned of the '374 Patent.

75. The pictures (Exhibits 10-13, 15-25), in large part, depict and document Meridian in the process of infringing on the '374 Patent, in addition to what was witnessed and documented in Sarasota.

76. As a direct and proximate consequence of the infringement, Safe Haven has been, is being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer

11

injury and damages for which it is entitled to relief under 35 U.S.C. §§ 271, 281 and 284 adequate to compensate for such infringement, including lost profits, and in no event less than a reasonable royalty.

77. Meridian's infringement is further causing and will continue to cause irreparable harm to Safe Haven, for which there is no adequate remedy at law.  Unless and until enjoined by the Court, Meridian will continue to infringe the '374 Patent, and under 35 U.S.C. § 283 Safe Haven is entitled to an injunction against further infringement.

78. Additionally, Meridian has known that its activities concerning its bird removal activities infringed at least the two aforementioned claims of the '374 Patent.

79. Upon information and belief, Meridian has made no attempt to alter its process to not infringe the '374 Patent.  In fact, it has altered its processes to directly violate the '374 Patent.

80. Therefore, upon information and belief, Meridian's infringement of at least one claim of the '374 Patent has been willful.  Safe Haven has been damaged as a result of Meridian's willful infringement, and seeks increased damages, up to and including treble damages.

## COUNT 2: INDIRECT INFRINGEMENT OF THE '374 PATENT

81. Safe Haven reincorporates the above referenced paragraphs and sets them forth fully herein.

82. Meridian not only has employees who infringe upon the '374 Patent, but Meridian also at times employs independent contractors, affiliates, partners and other companies to assist them with bird removal.

83. Meridian has provided the information in the '374 Patent to its independent contractors, affiliates, partners, and other companies, and Meridian has instructed, trained, and compensated them based on their work violating the '374 Patent.

84. The workers in Sarasota, for example, were employees or independent contractors hired by Meridian, trained by Meridian, following the process instructed and required by Meridian.

85. Meridian took actions that induced these independent contractors, affiliates, partners, and other companies to violate the '374 Patent.

86. Meridian has known of the '374 Patent since at least May 21, 2019, and has been knowingly infringing and inducing infringement since at least that time.

87. Meridian's actions demonstrate the intent to cause the acts that form the basis of the direct infringement, and Meridian did so with the specific intent to infringe the '374 Patent.

88. Meridian has contributed to the infringement of at least claim 6 and claim 7 of the '374 Patent by others, including its independent contractors, affiliates, partners, and other companies that Meridian works with, by entering into contracts with those individuals to capture birds from Meridian's customers using the methods that violate the'374 Patent.

89. Meridian has contributorily infringed and is a contributory infringer because, with knowledge of the '374 Patent, it supplied its independent contractors, affiliates, partners, and other companies with which it works, information about the process contained in the '374 Patent, and Meridian has trained and expressed an intention that these individuals would complete Meridian's work using methods that would infringe the '374 Patent.

90. Meridian knew that the methods that these independent contractors, affiliates, partners, and other companies would use would infringe at least claim 6 and claim 7 of the '374 Patent.

91. Safe Haven has been damaged as a result of Meridian's indirect infringement and is entitled to relief under 35 U.S.C. §§ 271, 281, 283 and 284 based on Meridian's induced and/or contributory infringement.

## COUNT 3: DIRECT INFRINGEMENT OF THE '108 PATENT

92. Safe Haven reincorporates the above referenced paragraphs and sets them forth fully herein.

93. In violation of 35 U.S.C. § 271, Meridian has infringed and continues to infringe, literally or under the doctrine of equivalence, at a minimum, Claims 1, 2, 4, 5, 6, 7, 8, 11, and 17 of the '108 Patent.

94. Claim 1 reads: "A method of relocting birds within a structure, the method comprising: installing a bird relocation system, the bird relocation system comprising; at least one perimeter net, at least one trapping net, and at least one flushing device; wherein a top edge of either or both of the at least one perimeter net and at least one trapping net is positioned at or near a ceiling of the structure, and flushing the animal through the structure wherein the flushing device chases the bird toward the at least one perimeter net and into the perimeter net or the trapping net."

95. Safe Haven witnessed infringement of Claim 1 in Sarasota, except that there were not trapping nets in use in Sarasota at that time.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

96. Claim 2 reads: "The method of Claim 1, wherein the at least one perimeter net is installed such that one side of the at least one perimeter net is proximal to one side of the structure."

97. Safe Haven witnessed infringement of Claim 2 in Sarasota, except that there were not trapping nets in use in Sarasota at that time.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

98. Claim 4 reads: "The method of claim 1, wherein the at least one perimeter net and at least one trapping net are mist nets."

99. Safe Haven witnessed infringement of Claim 4 in Sarasota, except that there were not trapping nets in use in Sarasota at that time.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

100.     Claim 5 reads: "The method of claim 1, wherein either or both of the at least one perimeter net and at least one trapping net are attached to at least one telescoping pole."

101.     Safe Haven witnessed infringement of Claim 5 in Sarasota, except that there were not trapping nets in use in Sarasota at that time.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

102.     Claim 6 reads: "The method of claim 5, wherein the at least one telescoping pole comprises a means of attachment to a rafter or beam proximal to the ceiling of the structure."

103.     Safe Haven witnessed infringement of Claim 6 in Sarasota, except that there were not trapping nets in use in Sarasota at that time.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

104.     Claim 7 reads: "The method of claim 6, wherein the means of attachment comprises a hook."

15

105.     Safe Haven witnessed infringement of Claim 7 in Sarasota, except that there were not trapping nets in use in Sarasota at that time.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

106.     Claims 8 reads: "The method of claim 5, wherein the at least one telescoping pole comprises a first end and second end; a removable connector; a rope and pulley; and a cleat, and wherein the first end comprises a hook."

107.     Safe Haven witnessed infringement of Claim 8 in Sarasota, except that there were not trapping nets in use in Sarasota at that time.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

108.     Claim 11 reads: "A bird relocation system for relocating a bird in a structure, the system comprising: at least one perimeter net; at least one trapping net; at least one flushing device, and at least one telescoping pole, wherein either or both of the at least one perimeter net and the at least one trapping net are attached to at least one telescoping pole."  (Exhibit 5).

109.     The workers in Sarasota were infringing on this claim, witnessed by Safe Haven, except that in Sarasota the workers were not at that time using a trapping net.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

110.     Claim 12 reads: "The system of claim 11, wherein the at least one perimeter net and the at least one trapping net are mist nets."

111.     Safe Haven witnessed infringement of Claim 12 in Sarasota, except that there were not trapping nets in use in Sarasota at that time.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

112.     Claim 13 reads: "The system of claim 11, wherein the at least one telescoping ple comprises a means of attachment to a rafter or beam proximal to the ceiling of the structure."

113.     Safe Haven witnessed infringement of Claim 13 in Sarasota, except that there were not trapping nets in use in Sarasota at that time.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

114.     Claim 14 reads: "The system of claim 11, wherein the at least one telescoping pole comprises a first end and second end, a removable connector, a rope and pulley; and a cleat, and wherein the first end comprises a hook."

115.     Safe Haven witnessed infringement of Claim 14 in Sarasota, except that there were not trapping nets in use in Sarasota at that time.  However, Exhibit 12 shows that Meridian does, in fact, use trapping nets.

116.     Additionally, Meridian is infringing Claim 17 of the '108 Patent, which reads: A method of relocating birds within a structure, the method comprising: installing a bird relocation system, the bird relocation system comprising; at least one perimeter net, and at least one flushing device; wherein a top edge of the at least one perimeter net is positioned at or near a ceiling of the structure, and flushing the animal through the structure wherein the flushing device chases the bird toward the at least one perimeter net, wherein the at least one perimeter net is installed such that one side of the at least one perimeter net is proximal to one side of the structure.  (EXHIBIT 5).

117.     The workers in Sarasota were infringing on this claim, witnessed by Safe Haven.

118.     As has been discussed herein, Meridian is currently using a method of relocating birds within a structure using at least one perimeter net, at least one trapping net, and at

17

least one flushing device, and at least one telescoping pole, wherein either or both of the at least one perimeter net and at least one trapping net are attached to at least one telescoping pole.  In fact, this is the method, upon information and belief, that Meridian is training its employees and technicians on – potentially because Meridian believes it actually owns the '108 Patent.

119.     Additionally, Meridian is relocating birds within a structure, by installing a bird relocation system, using at least one perimeter net, at least one flushing device, wherein the top edge of the at least one perimeter net is positioned at or near the ceiling of the structure, and flushing the birds through the structure where the flushing device chases the bird toward at least one perimeter net, where the at least one perimeter net is installed such as one of the at least one perimeter net is proximal to one side of the structure.  Again, this method was not used by Meridian until Meridian learned of the '108 Patent.

120.     The pictures (Exhibits 10-13, 15-25), in large part, depict and document Meridian in the process of infringing on the '108 Patent.

121.     Additionally Meridian is infringing on other claims of the '108 patent in such ways as will be revealed in discovery.

122.      As a direct and proximate consequence of the infringement, Safe Haven has been, is being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. §§ 271, 281 and 284 adequate to compensate for such infringement, including lost profits, and in no event less than a reasonable royalty.

123.     Meridian's infringement is further causing and will continue to cause irreparable harm to Safe Haven, for which there is no adequate remedy at law.  Unless and until enjoined by the Court, Meridian will continue to infringe the '108 Patent, and under 35 U.S.C. § 283 Safe Haven is entitled to an injunction against further infringement.

124.     Additionally, Meridian has known that its activities concerning its bird removal activities infringed at least the two aforementioned claims of the '108 Patent.

125.     Upon information and belief, Meridian has made no attempt to alter its process to not infringe the '108 Patent.  In fact, it has altered its processes to directly violate the '108 Patent.

126.     Therefore, upon information and belief, Meridian's infringement of at least one claim of the '108 Patent has been willful.  Safe Haven has been damaged as a result of Meridian's willful infringement, and seeks increased damages, up to and including treble damages.

## COUNT 4: INDIRECT INFRINGEMENT OF THE '108 PATENT

127.     Safe Haven reincorporates the above referenced paragraphs and sets them forth fully herein.

128.     Meridian not only has employees who infringe upon the '108 Patent, but Meridian also at times employs independent contractors, affiliates, partners, and other companies to assist them with bird removal.

129.     Meridian has provided the information in the '108 Patent to its independent contractors, affiliates, partners, and other companies, and Meridian has instructed, trained and compensated them based on their work violating the '108 Patent.

130.     Meridian took actions that induced these independent contractors, affiliates, partners, and other companies to violate the '108 Patent.

131.     Meridian has known of the '108 Patent since at least August 4, 2020 and has been knowingly infringing and inducing infringement since at least that time.

132.     Meridian's actions demonstrate the intent to cause the acts that form the basis of the direct infringement, and Meridian did so with the specific intent to infringe the '108 Patent.

133.     Meridian has contributed to the infringement of at least claims 1, 2, 4, 5, 6, 7, 8, 12, 13, and 14 of the '108 Patent by others, including its independent contractors, affiliates, partners, and other companies that Meridian works with, by entering into contracts with those individuals to capture birds from Meridian's customers using the methods that violate the'108 Patent.

134.     Meridian has contributorily infringed and is a contributory infringer because, with knowledge of the '108 Patent, it supplied its independent contractors, affiliates, and other companies with which it works, information about the process contained in the '108 Patent, and Meridian has trained and expressed an intention that these individuals would complete Meridian's work using methods that would infringe the '108 Patent.

135.     Meridian knew that the methods that these independent contractors, affiliates, partners, and other companies would use would infringe at least claims 1, 2, 4, 5, 6, 7, 8, 12, 13, and 14of the '108 Patent.

136.     Safe Haven has been damaged as a result of Meridian's indirect infringement and is entitled to relief under 35 U.S.C. §§ 271, 281, 283 and 284 based on Meridian's induced and/or contributory infringement.

## COUNT 5: DIRECT INFRINGEMENT OF THE '683 PATENT

137.    Safe Haven reincorporates the above referenced paragraphs and sets them forth fully herein.

138.    In violation of 35 U.S.C. § 271, Meridian has infringed and continues to infringe, literally or under the doctrine of equivalence, at a minimum, Claims 1, 2, 3, 4, 5, and 8 of the '683 Patent.

139.    Claim 1 reads: "A bird relocation system for relocating a bird in a structure, the system comprising: at least one perimeter net; wherein the at least one perimeter net is adapted to be positioned at or near a ceiling of the structure; and wherein the at least one perimeter net is attached to at least one telescoping pole comprising a means of attachment to a rafter or beam proximal to the ceiling of the structure."  (EXHIBIT 14).

140.    The workers in Sarasota were infringing on this claim, witnessed by Safe Haven.

141.    Additionally, Meridian is infringing Claim 2 of the '683 Patent, which reads: "The system of claim 1, wherein the at least one perimeter net is a mist net."  (EXHIBIT 14).

142.    The workers in Sarasota were infringing on this claim, witnessed by Safe Haven.

143.    Meridian is infringing Claim 3 of the '683 Patent, which reads: "The system of claim 1, wherein the means of attachment comprises a hook."

144.    The workers in Sarasota were infringing on this claim, witnessed by Safe Haven.

145.    Meridian is infringing Claim 4 of the '683 Patent, which reads: "The system of claim 1, wherein the at least one telescoping pole comprises a first end and second end, a removable connector, a rope and pulley; and a cleat, and wherein the first end comprises a hook."

146.    The workers in Sarasota were infringing on this claim, witnessed by Safe Haven.

147.     Meridian is infringing Claim 5 of the '683 Patent, which reads: "The system of claim 1, further comprising at least one trapping net."

148.     The workers in Sarasota were infringing on this claim, witnessed by Safe Haven.

149.     Meridian is infringing Claim 8 of the '683 Patent, which reads: "The system of claim 1, further comprising at least one flushing device."

150.     The workers in Sarasota were infringing on this claim, witnessed by Safe Haven.

151.     Meridian is infringing upon other claims of the '683 patent in such ways and manners as will be shown in discovery, similar to the infringement witnessed in Sarasota.

152.     Upon information and belief, Meridian is training its technicians, affiliates, and contractors to use this method – potentially because Meridian believes it actually owns the '683 Patent.

153.     Additionally, these violating methods were not used by Meridian until Meridian learned of the patent application.

154.     The pictures (Exhibits 10-13, 15-25), in large part, depict and document Meridian in the process of infringing on the '683 Patent, to supplement the forthcoming testimony from Safe Haven employees who saw the infringement in Sarasota.

155.     As a direct and proximate consequence of the infringement, Safe Haven has been, is being, and, unless such acts and practices are enjoined by the Court, will continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. §§ 271, 281 and 284 adequate to compensate for such infringement, including lost profits, and in no event less than a reasonable royalty.

156.     Meridian's infringement is further causing and will continue to cause irreparable harm to Safe Haven, for which there is no adequate remedy at law.  Unless and until enjoined by the Court, Meridian will continue to infringe the '683 Patent, and under 35 U.S.C. § 283 Safe Haven is entitled to an injunction against further infringement.

157.     Additionally, Meridian has known that its activities concerning its bird removal activities infringed at least the two aforementioned claims of the '683 Patent.

158.     Upon information and belief, Meridian has made no attempt to alter its process to not infringe the '683 Patent.  In fact, it has altered its processes to directly violate the '683 Patent.

159.     Therefore, upon information and belief, Meridian's infringement of at least one claim of the '683 Patent has been willful.  Safe Haven has been damaged as a result of Meridian's willful infringement, and seeks increased damages, up to and including treble damages.

## COUNT 6: INDIRECT INFRINGEMENT OF THE '374 PATENT

160.     Safe Haven reincorporates the above referenced paragraphs and sets them forth fully herein.

161.     Meridian not only has employees who infringe upon the '683 Patent, but Meridian also at times employs independent contractors, affiliates, partners and other companies to assist them with bird removal.

162.     Meridian has provided the information in the '683 Patent to its independent contractors, affiliates, partners, and other companies, and Meridian has instructed, trained, and compensated them based on their work violating the '683 Patent.

163. The workers in Sarasota, for example, were employees or independent contractors hired by Meridian, trained by Meridian, following the process instructed and required by Meridian.

164. Meridian took actions that induced these independent contractors, affiliates, partners, and other companies to violate the '683 Patent.

165. Meridian has known of the '683 Patent since at least July 20, 2021, and has been knowingly infringing and inducing infringement since at least that time.

166. Meridian's actions demonstrate the intent to cause the acts that form the basis of the direct infringement, and Meridian did so with the specific intent to infringe the '683 Patent.

167. Meridian has contributed to the infringement of at least claims 1, 2, 3, 4, 5, and 8 of the '683 Patent by others, including its independent contractors, affiliates, partners, and other companies that Meridian works with, by entering into contracts with those individuals to capture birds from Meridian's customers using the methods that violate the '683 Patent.

168. Meridian has contributorily infringed and is a contributory infringer because, with knowledge of the '683 Patent, it supplied its independent contractors, affiliates, partners, and other companies with which it works, information about the process contained in the '683 Patent, and Meridian has trained and expressed an intention that these individuals would complete Meridian's work using methods that would infringe the '683 Patent.

169. Meridian knew that the methods that these independent contractors, affiliates, partners, and other companies would use would infringe at least claims 1, 2, 3, 4, 5, and 8 of the '683 Patent.

170.     Safe Haven has been damaged as a result of Meridian's indirect infringement and

is entitled to relief under 35 U.S.C. §§ 271, 281, 283 and 284 based on Meridian's induced

and/or contributory infringement.

## JURY DEMAND

171.     Safe Haven demands a jury trial as to all issues that are triable by a jury in this

action.

## PRAYER FOR RELIEF

WHEREFORE Safe Haven asks:

1. That the Court declare that Meridian is liable for direct and/or indirect infringement of one
   or more claims in the '374 Patent;

2. That Meridian and its parents, subsidiaries, affiliates, successors, predecessors, assigns,
   and the officers, directors, agents, servants and employees of each of the foregoing, and
   those persons acting in concert, under contract with or in participation with any of them,
   be enjoined and restrained from continued infringement, including the use of any process
   or methods covered by the '374 Patent;

3. That the Court declare that Meridian is liable for direct and/or indirect infringement of one
   or more claims in the '108 Patent;

4. That Meridian and its parents, subsidiaries, affiliates, successors, predecessors, assigns,
   and the officers, directors, agents, servants and employees of each of the foregoing, and
   those persons acting in concert, under contract with or in participation with any of them,
   be enjoined and restrained from continued infringement, including the use of any process
   or methods covered by the '108 Patent;

5. That the Court declare that Meridian is liable for direct and/or indirect infringement of one or more claims in the '683 Patent;

6. That Meridian and its parents, subsidiaries, affiliates, successors, predecessors, assigns, and the officers, directors, agents, servants and employees of each of the foregoing, and those persons acting in concert, under contract with or in participation with any of them, be enjoined and restrained from continued infringement, including the use of any process or methods covered by the '683 Patent;

7. An award of all damages adequate to compensate Safe Haven for the infringement that has occurred, pursuant to 35 U.S.C. §§ 271, 281 and 284  including lost profits, but in no event less than a reasonable royalty, plus prejudgment and post judgment interest;

8. An award of treble damages for willful infringement pursuant 35 U.S.C. § 284;

9. That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285;

10. Safe Haven be awarded attorney fees, costs, and expenses occurred in connection with this action;

11. That judgment be entered otherwise in accordance with this complaint;

12. Trial by jury; and

13. For such other and further relief that the Court deems just and proper.

This the 22nd day of September, 2021.

*/s/ Andrew L. Fitzgerald*
Andrew L. Fitzgerald
North Carolina State Bar # 31522
FITZGERALD LITIGATION
119 Brookstown Avenue, Suite 402
Winston-Salem, NC 27101
Telephone: 336-793-8536
Fax: 336-793-4696
andy@fitzgeraldlitigation.com

26