IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SAFE HAVEN WILDLIFE REMOVAL AND PROPERTY MANAGEMENT EXPERTS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>MERIDIAN WILDLIFE SERVICES, LLC, d/b/a MERIDIAN BIRD REMOVAL, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 7:21-cv-00577<br>)<br>)  By: Elizabeth K. Dillon<br>)       United States District Judge<br>)<br>) |

**MEMORANDUM OPINION**

Safe Haven Wildlife Removal and Property Management Experts, LLC ("Safe Haven") sued Meridian Wildlife Services, LLC ("Meridian") for patent infringement in violation of 35 U.S.C. § 271.  Specifically, Safe Haven alleges direct and indirect infringement of three of its patents: United States Patent No. 10,251,374 ("'374 Patent"), United States Patent No. 10,729,108 ("'108 Patent"), and United States Patent No. 11,064,683 ("'683 Patent").  Each of these patents claims a system and method for removing animals—primarily birds—from indoor facilities.

The case is before the court on Meridian's motion to dismiss the second amended complaint for failure to state a claim.  (Dkt. No. 17.)  Following briefing and argument, the motion is ripe for resolution.  For the reasons stated below, the court will deny the motion to dismiss as to the direct infringement claims (Counts One, Three, and Five) and grant in part and deny in part the motion as to the indirect infringement claims (Counts Two, Four, and Six).

I. BACKGROUND

A. Factual Background[1]

Safe Haven provides bird and wildlife removal services to commercial and residential facilities. It owns three patents related to its bird removal method: the '374 Patent (issued on April 9, 2019), the '108 Patent (issued on August 4, 2020), and the '683 Patent (issued on July 20, 2021) (collectively, the "patents-in-suit"). The '374 Patent, as summarized by its abstract, is "[a]n animal relocation system and method comprising a perimeter net system[,] a trapping net system, and a flushing device, wherein the flushing device channels the animal through the perimeter net system and into the trapping net." (Am. Compl. ¶ 11.) The '108 Patent and '683 Patent, as summarized by their abstracts (Dkt. Nos. 11-5, 11-14), are quite similar to the '374 Patent. If a bird were to fly into a facility, Safe Haven's system—using the methods described in these patents—can guide the bird toward a net near the perimeter of the facility and then enclose the bird in the netting system until it is flushed into the net.

The inventor of the methods encompassed by the patents-in-suit is Derek Tolley, the current owner and president of Safe Haven. Several years before Safe Haven initiated this case, Tolley worked as an independent contractor with Meridian, a competitor of Safe Haven.[2] The complaint alleges that, on May 26, 2016—shortly after filing the '374 Patent application—Tolley assigned his rights and interests in each of the patents-in-suit to Safe Haven. (*Id.* ¶¶ 9, 14, 18.)

The complaint alleges that Meridian learned of the methods for wildlife removal described in the patents-in-suit from the filings with the U.S. Patent and Trademark Office, and it "immediately" began using, and still continues to use, those methods and their outlined

---

[1] The factual allegations below, which are accepted as true for the purposes of a 12(b)(6) motion, are taken from Safe Haven's amended complaint (Am. Compl., Dkt. No. 11).

[2] The complaint does not allege specific or approximate dates during which Tolley worked with or for Meridian.

operations of capturing wildlife from indoor facilities. (Am. Compl. ¶¶ 29–31.) Previously, Meridian had used a system wherein a trapping net would be placed near the bird and the individual operating the trapping net would track the bird through the store, keeping the trapping net near the bird to try to get the bird into the net. (*Id.* ¶ 39.) By contrast, Safe Haven claims its "perimeter net" system "recognizes that a bird will fly to a corner or perimeter if it feels trapped," and thus it "directs the bird to the perimeter where there is a net," where the Safe Haven technicians can then "shrink the area of the netting system until eventually the bird is in a very small area near the perimeter and is flushed into the net." (*Id.*) Safe Haven's system "drastically reduces the time, effort, and disruption to the store or building operations while capturing the bird," as well as "the amount of bird droppings, feathers, etc. that could potentially contaminate the area." (*Id.* ¶ 40) Safe Haven's system also has a higher capture rate and is more likely to allow the bird to leave the store or facility safely. (*Id.*) Safe Haven alleges that Meridian changed its system to use the "perimeter net" described in the patents-in-suit and is now using those methods to compete in the marketplace. (*Id.* ¶ 41.)

On May 21, 2019, Safe Haven sent a letter to Meridian inquiring whether Meridian would be interested in partnering with Safe Haven and/or obtaining a license from Safe Haven relative to the '374 Patent. (*Id.* ¶ 33; Dkt. No. 11-7.) Meridian responded via letter on July 19, 2019; it stated that Meridian had developed its own systems and methods for bird removal, that those systems and methods were in use prior to the filing date of the '374 Patent, and thus that Meridian "d[id] not see significant value to [its] business" in partnering with Safe Haven in relation to the '374 Patent. (Am. Compl. ¶ 34; Dkt. No. 11-8.) Meridian further wrote that "the sole inventor of the '374 patent—Mr. Derek Tolley—is a former Meridian employee," and that "[t]o the extent Safe Haven believes that the '374 patent covers systems or methods used by

Meridian," it "encourage[d]" Safe Haven "to reevaluate the listing of inventors for the '374 patent." (*Id.*) Meridian closed by noting that "there are procedures for correcting inventorship in issued US patents" and that it "would be glad to cooperate with [Safe Haven] in achieving any necessary inventorship corrections." (*Id.*)

Safe Haven alleges that Meridian's letter "does not directly claim that [it] is not infringing upon the '374 Patent"; rather, it suggests that Tolley, who years prior had worked with Meridian as an independent contractor, "had developed the '374 Patent in such a way as to vest ownership of [it] to Meridian, not Safe Haven." (Am. Compl. ¶ 34.) Meridian allegedly switched from using its own practices for bird removal to the more successful practices described in the patents-in-suit after reading the '374 Patent. Meridian has also required its employees and contractors to sign nondisclosure agreements regarding its training in and use of these methods, a policy which allegedly began after Meridian learned of Safe Haven's patents. (*Id.* ¶ 65.)

Meridian has made claims on its website that, according to Safe Haven, are worded in a way that "impl[ies] that Meridian owns the [patents-in-suit]." (Am. Compl. ¶ 36.) For example, Meridian's website notes that "[o]ur patented 'Bird-N-Free' capture system and process allows us to predictably remove birds from inside any facility."[3] (*Id.*; Dkt. No. 11-2.) Meridian similarly claims on the website that it has "developed a patented 'Bird-N-Free' system and process that enables us to catch and remove birds from inside any facility." (Am. Compl. ¶ 36; Dkt. No. 11-9.) The website also states that Meridian performs "[r]emoval using patented equipment and processes." (Am. Compl. ¶ 36.)

Safe Haven's complaint contains several photos taken from Meridian's social media page that it alleges depict Meridian employees using the methods encompassed by the patents-in-suit.

---

[3] Safe Haven alleges that this "Bird-N-Free capture system" refers to the patents at issue.

4

(*Id.* ¶ 47.) Among them are:

- A photo that appeared on Meridian's social media page on October 22, 2020, showing a Meridian employee holding a bird; in the background is a telescoping pole, with the pole attached to the net and the net attached to the structure at the perimeter (Dkt. No. 11-10; Am. Compl. ¶ 42);

- A photo that appeared on Meridian's social media page on July 8, 2019, May 25, 2020, and May 17, 2021, depicting a Meridian employee and, in the background, a telescoping pole attached to the perimeter by rope at the bottom, extending to or near the ceiling (Dkt. No. 11-11; Am. Compl. ¶ 43);

- A photo that appeared on Meridian's social media page on November 4, 2018, of a Meridian employee and, to the left of that employee, four ropes leading to the ceiling which are part of a trapping net (not a perimeter net) attaching to the ceiling (Dkt. No. 11-12; Am. Compl. ¶¶ 44–45); and

- A photo that appeared on Meridian's social media page on December 21, 2020, and December 23, 2019, of a Meridian employee and, behind him, a telescoping pole that appears to extent to or near the ceiling and be attached to a perimeter (Dkt. No. 11-13; Am. Compl. ¶ 46).

Additionally, Derek Tolley and another Safe Haven employee witnessed and took videos of two Meridian workers catching a bird in public view in a Lowe's store on September 17, 2021, in Sarasota, Florida. (*Id.* ¶ 48.) Included in the complaint are screen shots of those videos (Dkt. Nos. 11-15–11-25) showing workers in Meridian shirts, telescopic poles, perimeter mist nets with an edge at or near the top of the ceiling, a hook, a flushing device, and a pulley system, among other things. (Am. Compl. ¶ 49.)

**B. Procedural History**

Safe Haven brought this action on June 25, 2021—initially in the Middle District of North Carolina—and filed its amended complaint on September 22, 2021. The amended complaint alleges six causes of action: direct and indirect infringement of the '374 Patent (Counts One and Two); '108 Patent (Counts Three and Four), and '683 Patent (Counts Five and Six).

5

Meridian moved to dismiss all counts for failure to state a claim and for improper venue. (Dkt. No. 16.)  The parties resolved the latter issue by consent by jointly moving to transfer the case to this district, which the transferor court granted.  After the court held oral argument on the motion to dismiss, Meridian moved to stay this case pending resolution of its petitions for inter partes review (IPR) of the patents-in-suit by the U.S. Patent Trial and Appeal Board (PTAB) (Dkt. No. 42), which the court granted on December 9, 2022 (Dkt. No. 55).  On January 24, 2023, the court lifted the stay upon notice from the parties that the PTAB had denied Meridian's IPR petitions.  (Dkt. Nos. 56–57.)

## II.  ANALYSIS

### A.  Motion to Dismiss Standard

The Federal Circuit, which possesses exclusive jurisdiction over appeals in patent cases, applies its own law with respect to issues of substantive patent law and procedural issues pertaining to patent law.  *See Jenkins v. LogicMark, LLC*, No. 3:16-CV-751-HEH, 2017 WL 376154, at *2 n.2 (E.D. Va. Jan. 25, 2017).  However, "[f]or issues not unique to patent law, [the Federal Circuit] appl[ies] the law of the regional circuit in which [the case] would otherwise lie." *Id.* (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 841 (Fed. Cir. 2010)).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when a plaintiff pleads factual matter allowing the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In determining whether this standard has been satisfied, the court must accept as true all well-pleaded facts in the complaint and "draw[] all reasonable factual inferences from those facts in

the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

In a patent case, a plaintiff cannot satisfy the pleading standards set forth in *Twombly* and *Iqbal* "by reciting the claim elements and merely concluding that the accused product [or process] has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product [or process] infringes the patent claim." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) (internal quotations and citations omitted). A patentee "need not prove infringement at the pleading stage"; it also is not required "to plead infringement on an element-by-element basis." *Id.* at 1352, 1354; *see also Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000). Instead, the patentee must allege sufficient facts to "place the alleged infringer on notice of what activity is being accused of infringement." *Bot M8*, 4 F.4th at 1352 (internal quotations and ellipses omitted). "The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device [or process]." *Id*. at 1353.

## B. Direct Infringement (Counts One, Three, and Five)[4]

Under the Patent Act, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor," is liable for direct infringement. 35 U.S.C. § 271(a). Each of the claims in the patents-in-suit are directed to methods and/or systems. "Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020,

---

[4] The patents-in-suit cover the same basic processes, so the court will address the direct and indirect infringement counts collectively. To the extent there is a legally significant difference between the claims in the patents, that will be noted.

1022 (Fed. Cir. 2015). A plaintiff claiming direct infringement need only prove "unauthorized use of a patented invention"; the defendant's knowledge or intent is "irrelevant." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 n.2 (2011) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 484 (1964)). Thus, to survive a Rule 12(b)(6) motion, a plaintiff need only plead factual content that allows the court to draw the reasonable inference "that the defendant used the patented invention." *See Artrip v. Ball Corp.*, No. 1:14CV00014, 2017 WL 5037470, at *3 (W.D. Va. Nov. 3, 2017).

Safe Haven insists that Meridian directly infringed (and continues to infringe) upon the '374 Patent (Count One), '108 Patent (Count Three), and '683 Patent (Count Five) by using the patented methods for bird removal comprising various perimeter nets, trapping nets, flushing devices, and telescoping poles. (Am. Compl. ¶¶ 67, 93, 138.) Specifically, it asserts that Meridian infringed upon Claims 6 and 7 of the '374 Patent, Claims 1, 2, 4 through 8, 11 through 14, and 17 of the '108 Patent, and Claims 1 through 5 and 8 of the '683 Patent. (*Id.* ¶¶ 68, 70, 94–117, 139–147; Dkt. No. 24 at 2–3.) Safe Haven bases these allegations on its employees' eyewitness accounts and accompanying video recording from their visit to a Lowe's in Sarasota, as well as pictures that were posted on Meridian's social media account. (*Id.* ¶¶ 79–85, 95–120, 140–50, 154.) Safe Haven further asserts that Meridian has trained its employees and contractors to use these patented methods, perhaps because it believes it owns them. (*Id.* ¶¶ 73, 118, 152.)

In contrast, Meridian argues that Safe Haven's complaint is deficient because, among other reasons, it only states "that some unspecified Meridian good or service allegedly meets the claims in some unspecified way." (Dkt. No. 17 at 24; *see also id.* 25 (quoting *Kim v. Green Tea Ideas, Inc.* No. 3:17-CV-00449-JAG, 2018 WL 1172998, at *2 (E.D. Va. Mar. 6, 2018) (dismissing direct infringement claims because plaintiff "fail[ed] to specify which features of the

8

Accused Product correspond to the claim limitations" and did "not identify how each feature of the Accused Product infringes the patent.") (emphasis in original)).) Generally, it asserts that Safe Haven does not present sufficient evidence of Meridian following all the patented steps or using all the patented components. In fact, Meridian goes so far as to argue that there are "*no facts . . .* that Meridian uses *any* of the netting or flushing device components *as claimed*." (Dkt. No. 17 at 22 (emphasis added).) Meridian contests whether the claimed processes are visible in the photos provided, and its broader position seems to be that all the necessary components must be visible for Safe Haven to plausibly state a claim for relief. (*See* Dkt. No. 33 at 9.) Thus, it argues, the appearance of a "single claim element" in a photo, "such as a net," for example, is insufficient. (*Id.* 4.)

But viewing the photos and allegations collectively, Safe Haven has alleged sufficient facts to support a reasonable inference that Meridian used the processes embraced by the '374, '108, and '683 Patents. Looking to the broadest claims in the patents-in-suit, Claims 11 and 17 of the '108 Patent, for example, claims:

> A bird relocation system for relocating a bird in a structure, the system comprising: at least one perimeter net; at least one trapping net; at least one flushing device, and at least one telescoping pole, wherein either or both of the at least one perimeter net and the at least one trapping net are attached to at least one telescoping pole.
>
> . . .
>
> A method of relocating birds within a structure, the method comprising: installing a bird relocation system, the bird relocation system comprising; at least one perimeter net, and at least one flushing device; wherein a top edge of the at least one perimeter net is positioned at or near a ceiling of the structure, and flushing the animal through the structure wherein the flushing device chases the bird toward the at least one perimeter net, wherein the at least one perimeter net is installed such that one side of the at least one perimeter net is proximal to one side of the structure.

(Dkt. No. 11-5 at 12.)  Similarly, Claim 1 of the '683 Patent claims:

> A bird relocation system for relocating a bird in a structure, the system comprising: at least one perimeter net; wherein the at least one perimeter net is adapted to be positioned at or near a ceiling of the structure; and wherein the at least one perimeter net is attached to at least one telescoping pole comprising a means of attachment to a rafter or beam proximal to the ceiling of the structure.

(Dkt No. 11-14 at 12.)  Lastly, Claims 6 and 7 of the '374 Patent claim:

> An animal relocation system for relocating an animal in a structure, the system comprising a perimeter net; a trapping net wherein the trapping net comprises a first trapping net, a second trapping net, and a third trapping net; and a flushing device, wherein the flushing device is used to direct the animal into the trapping net.
>
> . . .
>
> The animal relocation system of claim 6, further comprising: the perimeter net comprising; a net and a telescoping pole, the net attached to the telescoping pole and the telescoping pole attached to the structure.

(Dkt. No. 11-4 at 11.)  The remaining dependent claims in the '108 and '683 patents largely describe specific additional components to be used in this process—such as mist nets, a rope and pulley, a hook, a cleat, and a removable connector, among others (see Dkt. No. 11-5 at 12, ¶¶ 4, 7, 8, 12, 14 ('108 Patent); Dkt. No. 11-14 at 12, ¶¶ 2–8 ('683 Patent))—or particular ways that those components are to be used (see Dkt. No. 11-5 at 12, ¶¶ 2, 5–6, 13).

Safe Haven alleges that the photos appended to its complaint (some of which were screen shots from videos taken by employees of Safe Haven itself) depict individuals in Meridian shirts (*see, e.g.*, Dkt. Nos. 11-15–11-25) using or having used deployed mist perimeter nets (*see* Dkt. No. 11-25; Compl. ¶ 55) with the top edge of the perimeter net extending to or near the ceiling (*see, e.g.*, Dkt. Nos. 11-11–11-13), a sack/bag at the end of a flushing device (*see, e.g.*, Dkt. No. 11-19), a telescoping pole (*see, e.g.*, Dkt Nos. 11-10–11-11, 11-13), hooks, a pulley system (*see*

Dkt. No. 11-25), a cleat, and a removable connector. Meridian argues that none of the photos show "how Meridian is using a 'perimeter net,' a 'trapping net,' a 'flushing device,' or any other claimed component *as claimed* in the Patents-in-Suit." (Dkt. No. 17 at 23 (emphasis added).) But Safe Haven states the allegedly infringing process quite directly. The complaint represents that several of the photos were drawn from a video recorded by representatives of Safe Haven, who watched firsthand as Meridian employees used a telescoping pole with a bag at the end to flush a bird into a perimeter net that was against the wall and attached to the ceiling. Moreover, the photos obtained from Meridian's social media page appear to show that the company also employs trapping nets in these processes.

As noted earlier, it is well settled that an infringement plaintiff is not required to "prove its case" in the complaint. *See, e.g.*, *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (citation omitted). And if a complaint is well-pleaded, it may proceed even if a judge thinks "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 1332 (quoting *Twombly*, 550 U.S. at 556). Here, upon drawing all reasonable inferences in Safe Haven's favor, these allegations—coupled with the photos (though the image quality leaves something to be desired) and the video which apparently shows the pictured Meridian employees actively carrying out the patented bird removal process—are sufficient at this stage to put Meridian on notice of how its processes allegedly infringe upon Safe Haven's patents as to each of the asserted claims.

For these reasons, Meridian's motion to dismiss the direct infringement claims (Counts One, Three, and Five) will be denied.

### C. Indirect Infringement (Counts Two, Four, and Six)

"A party may indirectly infringe a patent either (i) by inducing direct infringement, in violation of 35 U.S.C. § 271(b), or (ii) by contributing to direct infringement, in violation of 35 U.S.C. § 271(c)." *Rembrandt Soc. Media, LP v. Facebook, Inc.*, 950 F. Supp. 2d 876, 880 (E.D. Va. 2013). Additionally, "it is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement." *In re Bill of Lading*, 681 F.3d at 1333 (internal quotations and alterations omitted).

Unlike direct infringement, indirect infringement requires a defendant's knowledge of the patents at issue. *Cellcontrol, Inc. v. Mill Mountain Capital, LLC*, No. 7:21-CV-246, 2022 WL 598752, at *3 (W.D. Va. Feb. 28, 2022). "[T]here is disagreement among the district courts as to whether post-suit knowledge may satisfy this knowledge requirement," but the "majority view" is that a defendant's post-suit knowledge—produced by the filing of a lawsuit with sufficient factual allegations—satisfies the knowledge requirement for indirect infringement.[5] *See Rembrandt Soc. Media*, 950 F. Supp. 2d at 881; *Smart Wearable Techs. Inc. v. Fitbit, Inc.,* 274 F. Supp. 3d 371, 375 (W.D. Va. 2017). Safe Haven claims that Meridian indirectly infringed upon the '374 (Count Two), '108 (Count Four), and '683 (Count Six) Patents through induced infringement and contributory infringement.

Based on the complaint's allegations, it is reasonable for the court to infer that Meridian had knowledge of the *existence* of the '374 Patent (but not necessarily of any alleged *infringement* of that patent) as of the date it received the letter from counsel for Safe Haven dated

---

[5] Courts adopting the majority view "base[] the adequacy of post-suit knowledge on there being no sound reason that a defendant should avoid liability for an indirect infringement claim when it continues to promote infringing uses of their products after learning about the patents, simply because it happened to learn of the patent in connection with a lawsuit." *Rembrandt Soc. Media, LP*, 950 F. Supp. 2d at 881.

May 21, 2019.[6] However, the only attempts Safe Haven makes to allege pre-suit knowledge as to the other patents are its bald statements that Meridian "has known" of the '108 and '683 patents since August 4, 2020, and July 20, 2021 (Compl. ¶¶ 131, 165), respectively, which are also the dates that those patents issued. These allegations are evidently conclusory, and no other part of the complaint explains how Meridian became aware of these patents on those dates other than the fact that those were the dates of issuance. Rather, the earliest Meridian can be said to have knowledge of the '108 Patent is the date of the initial complaint in this case (June 25, 2021), when Safe Haven first alleged that Meridian had infringed upon the '108 Patent. Further, at that time, the '683 Patent had not yet issued, and Safe Haven did not allege infringement of that patent until it filed its amended complaint on September 22, 2021, which came after the alleged acts of infringement in Sarasota. As such, the complaint offers no well-pleaded allegation that Meridian had knowledge of the '683 Patent in Sarasota such that a claim for indirect infringement could be based upon those actions or anything preceding them.

That said, "patent infringement is often 'an ongoing offense that can continue after litigation has commenced.'" *See Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols., LLC*, 564 F. Supp. 3d 1126, 1142 (D. Utah Sept. 23, 2021) (quoting *Liqwd, Inc. v. L'Oreal USA, Inc.*, 720 F. App'x 623, 628 (Fed. Cir. 2018) (citations omitted)). "Even though infringement occurring before a complaint is filed cannot be deemed [knowing] if the alleged infringer lacked knowledge of the asserted patents, that does not mean that infringement continuing after a

---

[6] "An important practical aspect of our patent system is encouraging the practice of pre-suit notice through a cease-and-desist letter that calls out the patent claims, the accused product [or process], and the way it infringes the claims." *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 643 (N.D. Cal. 2022). "This practice is encouraged in order to give the alleged infringer a meaningful opportunity to cease infringement or to get a license, all before any lawsuit commences." *Id.* Here, although the May 21, 2019 letter came from Safe Haven's counsel, acknowledged that Meridian is also in the bird removal business, and solicited its interest in a license (each of which could support some remote deduction that Safe Haven perceived infringement), the letter did not recite any specific patent claims, refer to any particular process Meridian uses, or state how any such process infringed on Meridian's patents. Thus, the court is hard-pressed to conclude that Meridian was on notice of any infringement as of the date of this letter.

13

complaint is filed cannot be [knowing] just because the alleged infringer did not know about the patents until the complaint was filed." *See id.* at 1142–43.  Moreover, Safe Haven has alleged that Meridian continues to use the same allegedly infringing processes it employed in Sarasota through the present.

Accordingly, the court finds that any claims of indirect infringement of the patents-in-suit by Meridian can be based only upon acts of infringement committed on or after the date it first learned of each patent.  To summarize, assuming all other elements are satisfied, Safe Haven may seek relief under Count Two for indirect infringement of the '374 Patent occurring only from May 21, 2019, to the present; under Count Four for indirect infringement of the '108 Patent only from June 25, 2021, to the present; and under Count Six for indirect infringement of the '683 Patent only from September 22, 2021, to the present.

The court will now consider whether the complaint plausibly alleges induced or contributory infringement based upon acts occurring within that period.

### 1. Induced infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271.  Induced infringement "requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent."  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed Cir. 2009).  Willful blindness can satisfy the knowledge requirement, *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016), and circumstantial evidence may suffice to prove specific intent, *Vita-Mix*, 581 F.3d at 1326.  Such circumstantial evidence may include "active steps . . . taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use."  *Takeda Pharms.*

*U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed Cir. 2015) (quoting *Metro-Goldwyn-Maver Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)). These active steps must go beyond mere description and must rise to the level of recommending, encouraging, promoting, or the like. *Id.*

Safe Haven alleges in its complaint that Meridian has induced infringement by knowingly and intentionally inducing others to infringe when it provided the information in the patents to them and "instructed, trained, and compensated" them based on their work. (*See, e.g.*, Compl. ¶¶ 83, 129, 162.) And these parties, Save Haven submits, have complied with Meridian's instructions by following the processes at issue. On the other hand, Meridian maintains that the complaint provides no basis from which to draw the inference that it specifically intended another to infringe the patents at issue and reiterates its position that Safe Haven has failed to show *how* any third party performs the patented methods. Alternatively, Meridian insists that if it is proven that there is no underlying act of direct infringement, then Safe Haven's claim of induced infringement automatically fails.

The court finds that the complaint plausibly states a claim as to induced infringement of the '374 and '108 Patents, but not the '683 Patent. As to the former two patents-in-suit, the photos from Sarasota (and alleged video representing the same) support a reasonable inference that Meridian knowingly induced its employees, independent contractors, and the like to engage in the allegedly infringing acts—at least on that day—because it hired them to do that work (or at least that inference is plausible from the fact that the individuals in the photos are wearing Meridian shirts). Lastly, there is circumstantial evidence to indicate that Meridian harbored a specific intent to encourage another's infringement of the patent. The ability to perform such a specialized task would undoubtedly require some level of basic training and instruction by

15

Meridian in how to execute its method for removing birds from indoor facilities (which is the subject of this litigation) and how to use its components.[7]

However, regarding the '683 Patent, this complaint provides no allegations that Meridian knowingly induced any infringement *after it learned of the patent*. Of course, as noted earlier, the complaint plausibly alleges that the Meridian directly infringed upon the claims asserted in the '683 Patent in Sarasota. But without prior knowledge of the '683 Patent, Meridian could not have specifically intended to infringe upon it. That said, Safe Haven does assert that Meridian continues to employ these same processes today, and due to the apparent similarities between the processes covered by the patents-in-suit, the court does not foreclose the possibility that discovery on Safe Haven's claims as to Counts Two and Four could reveal ongoing induced infringement as to Count Six.

As such, the court will deny the motion to dismiss Counts Two and Four with respect to induced infringement and grant the motion to dismiss Count Six with respect to induced infringement; however, Count Six will be dismissed without prejudice.

**2. Contributory infringement**

"Contributory infringement occurs if a party sells or offers to sell, a material or apparatus for use in practicing a patented process, and that 'material or apparatus' is material to practicing the invention, has no substantial non-infringing uses, and is known by the party "to be especially made or especially adapted for use in an infringement of such patent." 35 U.S.C. § 271(c); *see also In re Bill of Lading*, 681 F.3d at 1337. Like induced infringement, contributory

---

[7] Specifically with respect to the '374 Patent, in its July 19, 2019 response to Safe Haven's letter soliciting a license, Meridian indicated that its methods "have proven to be very effective," "were developed by Meridian," and "were in use prior to the filing date of the '374 patent," and then seemingly questioned whether Safe Haven is the true owner of the '374 Patent. (Dkt. No. 11-8 at 1.) The court does not draw the same inference from this response as does Safe Haven (namely, that Meridian essentially admitted infringement), but it is at least apparent from the allegations that, as of the date of this letter, Meridian had already considered the extent to which its own processes infringed upon the '374 Patent.

infringement requires that the infringer have knowledge of the patent itself and of the alleged infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).

As to Counts Two and Four, the complaint does not contain facts sufficient to support a claim of contributory infringement. Rather, Safe Haven largely recited the elements of contributory infringement, buttressed by conclusory statements. In particular, Safe Haven made seemingly no attempt to identify a "material or apparatus" that "is material to practicing the invention" and "has no substantial non-infringing uses." *See id.* Descriptions and visuals of the relevant components—such as perimeter nets, various trapping nets, and flushing devices—adequately identify the materials or apparatuses themselves, but they fail, in and of themselves, to indicate their materiality to practicing the patented animal removal method or whether they have non-infringing uses. *See Smart Wearable Techs. Inc.*, 274 F. Supp. 3d at 376 (granting motion to dismiss for claim of contributory infringement because plaintiff made the assertion of no substantial non-infringing uses but provided no supporting facts). Lastly, there are no facts alleged to support the inference that Meridian knew its process was especially made or adapted for an infringing use. *See Cellcontrol, Inc.*, 2022 WL 598752, at *5.

Count Six will be dismissed without prejudice as to contributory infringement for the same reasons supporting dismissal as to induced infringement. However, as to contributory infringement in Counts Two and Four, "[t]he court has broad discretion to decide whether to grant leave to amend" when considering a Rule 12(b)(6) motion. *Wallace v. Chrysler Credit Corp.*, 743 F. Supp. 1228, 1236 (W.D. Va. 1990). Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a); *see also Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (leave to amend should be denied only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the nonmoving party, or the amendment

17

would have been futile"). Although this first amended complaint represents Safe Haven's second attempt to state an actionable claim for patent infringement, there is no indication of bad faith or that prejudice would result from granting Safe Haven leave to amend.[8] Moreover, although this complaint, as filed, is factually insufficient to state a claim for contributory infringement, those claims are not necessarily futile in the court's view. As such, the court will dismiss Counts Two and Four as to contributory infringement but grant Safe Haven leave to amend those counts in an effort to state a claim for contributory infringement.

### III. CONCLUSION

For the reasons stated above, the court finds that Safe Haven has sufficiently pled claims for direct infringement and induced infringement; however, it has failed to sufficiently plead a claim for contributory infringement.

Meridian's motion to dismiss for failure to state a claim will be granted in part and denied in part. As to Counts One, Three, and Five, the motion will be denied. As to Count Six, the motion will be granted and Count Six will be dismissed without prejudice. As to Counts Two and Four, the motion will be denied with respect to the induced infringement claims but granted as to the contributory infringement claims. However, Safe Haven will be granted 21 days' leave to amend the contributory infringement claims in Counts Two and Four.[9]

---

[8] Importantly, it appears that the object of Safe Haven's initial amendment to its complaint was not to cure perceived deficiencies in its allegations but, rather, to add allegations regarding activity occurring after filing and to assert infringement of a third patent.

[9] It bears noting that the court is granting in part and denying in part the motions to dismiss Counts Two and Four; thus, it may be complicated to parse out which allegations in those counts relate to the induced-infringement claims (which will proceed and must not be amended) and which relate to the contributory-infringement claims (which are subject to amendment). Accordingly, as will be set out in the accompanying order, Safe Haven may add factual allegations to the complaint and those counts as necessary but may not *remove* any allegations that presently appear in Counts Two and Four without prior leave of court.

The court will issue an appropriate order.

Entered: March 31, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge