**U.S. DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**(Roanoke Division)**

**SAFE HAVEN WILDLIFE REMOVAL**
**AND PROPERTY MANAGEMENT**
**EXPERTS, LLC,**

      **Plaintiff,**

**v.**                                                   **No.:  7:21-cv-00577-EKD**
**b**

**MERIDIAN WILDLIFE SERVICES**
**LLC, d/b/a MERIDIAN BIRD**
**REMOVAL, INC.,**

      **Defendant.**

---

**MERIDIAN WILDLIFE SERVICES**
**LLC, d/b/a MERIDIAN BIRD**
**REMOVAL, INC.,**

      **Counterclaim Plaintiff,**

**v.**                                                   **No.:  7:21-cv-00577-EKD**

**SAFE HAVEN WILDLIFE REMOVAL**
**AND PROPERTY MANAGEMENT**
**EXPERTS, LLC,**

**and**

**DEREK LESTER TOLLEY d/b/a SAFE HAVEN**
**AVIAN GROUP & WILDLIFE REMOVAL**

      **Counterclaim Defendants.**

## ANSWER, DEFENSES, AND COUNTERCLAIMS

Defendant Meridian Wildlife Services LLC, d/b/a Meridian Bird Removal, Inc. ("Meridian"), by counsel, responds to Plaintiff Safe Haven Wildlife Removal and Property Management Experts, LLC's ("Plaintiff" or "Safe Haven") Amended Complaint (Dkt. 11) as follows:

Each numbered paragraph below responds to the same numbered paragraph in the Amended Complaint. Any allegation Meridian does not expressly admit is denied.

## THE PARTIES[1]

1.      Meridian is admits that Safe Haven is a North Carolina limited liability company, and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1 of the Amended Complaint, and therefore denies them.

2.      Meridian admits that it is a Virginia company with its principal place of business in Christiansburg, Virginia.

## JURISDICTION AND VENUE

3.      Meridian admits that this is a complaint for alleged patent infringement arising under 35 U.S.C. § 271 *et seq*. Meridian denies that it, directly or through intermediaries, has committed or continues to commit any act of infringement in this or any judicial district and denies the remaining allegations of Paragraph 3 of the Amended Complaint.

4.      Meridian admits that this Court had subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and 1338. Meridian denies that it, directly or through intermediaries,

---

[1]      For ease of reference, Meridian incorporates the outline headings used in the Amended Complaint.  To the extent that such headings make factual allegations, Meridian does not adopt or admit such statement and instead denies them.

has committed or continues to commit any act of infringement in this or any judicial district and denies the remaining allegations of Paragraph 4 of the Amended Complaint.

5.      Meridian does not contest that venue over this action is proper in this District. Meridian denies that it, directly or through intermediaries, has committed or continues to commit any act of infringement in this or any judicial district and denies the remaining allegations of Paragraph 5 of the Amended Complaint.

6.      Meridian admits that Exhibit 1 purports to be a Meridian job posting. Meridian admits that Exhibit 2 purports to be the "About Us" page of Meridian's website. Meridian admits that Exhibit 3 purports to show a service area map. Meridian denies that it, directly or through intermediaries, has committed or continues to commit any act of infringement in this or any judicial district and denies the remaining allegations of Paragraph 6 of the Amended Complaint.

## THE PATENTS-IN-SUIT

7.      Meridian admits that Safe Haven purports to bring a claim for alleged patent infringement of U.S. Patent No. 10,251,374 ("'374 Patent"), U.S. Patent No. 10,729,108 ("'108 Patent"), and U.S. Patent No. 11,064,683 ("'683 Patent"). Meridian denies that it, directly or through intermediaries, has committed or continues to commit any act of infringement in this or any judicial district and denies the remaining allegations of Paragraph 7 of the Amended Complaint.

8.      Meridian admits that the '374 Patent is titled "Animal Relocation System and Method." Meridian admits that the '374 Patent issued on April 9, 2019.

9.      Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9 of the Amended Complaint, and therefore denies them.

10.     Meridian admits that Exhibit 4 purports to be a copy of the '374 Patent. Meridian is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10 of the Amended Complaint, and therefore denies them

11.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of the Amended Complaint, and therefore denies them.

12.     Meridian admits that the '108 Patent is titled "Animal Relocation System and Method." Meridian admits that the '108 Patent issued on August 4, 2020. Meridian is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 12 of the Amended Complaint, and therefore denies them.

13.     Meridian admits that Exhibit 5 purports to be a copy of the '108 Patent.

14.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 14 of the Amended Complaint, and therefore denies them.

15.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 15 of the Amended Complaint, and therefore denies them.

16.     Meridian admits that the '683 Patent is titled "Animal Relocation System and Method." Meridian admits that the '683 Patent issued on July 20, 2021. Meridian is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 16 of the Amended Complaint, and therefore denies them.

17.     Meridian admits that Exhibit 14 purports to be a copy of the '683 Patent.

18.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18 of the Amended Complaint, and therefore denies them.

## **BACKGROUND**

19.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19 of the Amended Complaint, and therefore denies them.

20.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20 of the Amended Complaint, and therefore denies them.

21.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21 of the Amended Complaint, and therefore denies them.

22.     Meridian denies the allegations of Paragraph 22 of the Amended Complaint.

23.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23 of the Amended Complaint, and therefore denies them.

24.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24 of the Amended Complaint, and therefore denies them.

25.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 25 of the Amended Complaint, and therefore denies them.

26.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26 of the Amended Complaint, and therefore denies them.

27.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27 of the Amended Complaint, and therefore denies them.

28.     Meridian admits the allegations of Paragraph 28 of the Amended Complaint.

29.     Meridian denies the allegations of Paragraph 39 of the Amended Complaint.

30.     Meridian denies the allegations of Paragraph 30 of the Amended Complaint.

31.     Meridian denies the allegations of Paragraph 31 of the Amended Complaint.

32.     Meridian admits that Exhibit 6 purports to be a printout from Meridian's website. Meridian admits that Exhibit 6 states "We have developed a patented 'Bird-N-Free' system and process that enables us to catch and remove birds from inside any facility." Meridian denies the remaining allegations of Paragraph 32 of the Amended Complaint.

33.     Meridian admits that Exhibit 7 is a letter from Safe Haven's attorney, Andrew L. Fitzgerald, to Meridian. Meridian denies the remaining allegations of Paragraph 33 of the Amended Complaint.

34.     Meridian admits the Exhibit 8 is a letter from Meridian's attorney, Christopher B. Kelly, to Safe Haven. Meridian denies the remaining allegations of Paragraph 34 of the Amended Complaint.

35.     Meridian denies the allegations of Paragraph 35 of the Amended Complaint.

36.     Meridian denies the allegations of Paragraph 36 of the Amended Complaint.

37.     Meridian denies the allegations of Paragraph 37 of the Amended Complaint.

38.     Paragraph 38 of the Amended Complaint requires claim construction which has not yet occurred and asks for a legal conclusion that cannot be admitted or denied, and therefore Meridian denies the allegations of Paragraph 38 at least because it lacks information sufficient to form a belief regarding the truth of the allegations.

39.     Meridian denies the allegations of Paragraph 39 of the Amended Complaint.

40.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40 of the Amended Complaint, and therefore denies them.

41.     Meridian denies the allegations of Paragraph 41 of the Amended Complaint.

42.     Meridian admits that Exhibit 10 purports to be an October 22, 2020 social media post. Meridian denies the remaining allegations of Paragraph 42 of the Amended Complaint.

43.     Meridian admits that Exhibit 11 purports to be a July 8, 2019 social media post. Meridian denies the remaining allegations of Paragraph 43 of the Amended Complaint.

44.     Meridian admits that Exhibit 12 purports to be a November 4, 2018 social media post. Meridian denies the remaining allegations of Paragraph 44 of the Amended Complaint.

45.     Meridian denies the allegations of Paragraph 45 of the Amended Complaint.

46.     Meridian admits that Exhibit 13 purports to be a social media post. Meridian denies the remaining allegations of Paragraph 46 of the Amended Complaint.

47.     Meridian denies the allegations of Paragraph 47 of the Amended Complaint.

48.     To the extent Paragraph 48 alleges infringement of the Patents-in-Suit, Meridian denies those allegations. Meridian is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 48 of the Amended Complaint, and therefore denies them.

49.     To the extent Paragraph 49 alleges infringement of the Patents-in-Suit, Meridian denies those allegations. Meridian admits that Exhibits 15 to 25 purport to be photographic stills of a video capture. Meridian is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 49 of the Amended Complaint, and therefore denies them.

50.     Meridian denies the allegations of Paragraph 50 of the Amended Complaint.

51.     Meridian denies the allegations of Paragraph 51 of the Amended Complaint.

52.     Meridian is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 52 of the Amended Complaint, and therefore denies them.

53.     Meridian denies the allegations of Paragraph 53 of the Amended Complaint.

54.     Meridian denies the allegations of Paragraph 54 of the Amended Complaint.

55.     Meridian denies the allegations of Paragraph 55 of the Amended Complaint.

56.     Meridian denies the allegations of Paragraph 56 of the Amended Complaint.

57.     Meridian denies the allegations of Paragraph 57 of the Amended Complaint.

58.     Meridian denies the allegations of Paragraph 58 of the Amended Complaint.

59.     Meridian denies the allegations of Paragraph 59 of the Amended Complaint.

60.     Meridian denies the allegations of Paragraph 60 of the Amended Complaint.

61.     Meridian denies the allegations of Paragraph 61 of the Amended Complaint.

62.     Meridian denies the allegations of Paragraph 62 of the Amended Complaint.

63.     Meridian denies the allegations of Paragraph 63 of the Amended Complaint.

64.     Meridian denies the allegations of Paragraph 64 of the Amended Complaint.

65.     Meridian admits that certain employees have entered into employment agreements with Meridian that contain confidentiality provisions.  Meridian denies the remaining allegations of Paragraph 65 of the Amended Complaint.

**COUNT 1: [ALLEGED] DIRECT INFRINGEMENT OF THE '374 PATENT**

66.     Meridian incorporates Paragraphs 1 through 65 of this Answer as if set forth here in full.

67.     Meridian denies the allegations of Paragraph 67 of the Amended Complaint.

68.     Meridian admits that Claim 6 of the '374 Patent recites: "6. An animal relocation system for relocating an animal in a structure, the system comprising a perimeter net; a trapping net wherein the trapping net comprises a first trapping net, a second trapping net, and a third trapping net; and a flushing device, wherein the flushing device is used to direct the animal into the trapping net." Meridian denies the remaining allegations of Paragraph 68 of the Amended Complaint.

69.     Meridian denies the allegations of Paragraph 69 of the Amended Complaint.

70.     Meridian admits that Claim 7 of the '374 Patent recites: "7. The animal relocation system of claim 6, further comprising: the perimeter net comprising: a net and a telescoping pole, the net attached to the telescoping pole and the telescoping pole attached to the structure." Meridian denies the remaining allegations of Paragraph 70 of the Amended Complaint.

71.     Meridian denies the allegations of Paragraph 71 of the Amended Complaint.

72.     Meridian denies the allegations of Paragraph 72 of the Amended Complaint.

73.     Meridian denies the allegations of Paragraph 73 of the Amended Complaint.

74.     Meridian denies the allegations of Paragraph 74 of the Amended Complaint.

75.     Meridian denies the allegations of Paragraph 75 of the Amended Complaint.

76.     Meridian denies the allegations of Paragraph 76 of the Amended Complaint.

77.     Meridian denies the allegations of Paragraph 77 of the Amended Complaint.

78.     Meridian denies the allegations of Paragraph 78 of the Amended Complaint.

79.     Meridian denies the allegations of Paragraph 79 of the Amended Complaint.

80.     Meridian denies the allegations of Paragraph 80 of the Amended Complaint.

## COUNT 2: [ALLEGED] INDIRECT INFRINGEMENT OF THE '374 PATENT

81.     Meridian incorporates Paragraphs 1 through 80 of this Answer as if set forth here in full.

82.     Meridian denies the allegations of Paragraph 82 of the Amended Complaint.

83.     Meridian denies the allegations of Paragraph 83 of the Amended Complaint.

84.     Meridian denies the allegations of Paragraph 84 of the Amended Complaint.

85.     Meridian denies the allegations of Paragraph 85 of the Amended Complaint.

86.     Meridian denies the allegations of Paragraph 86 of the Amended Complaint.

87.     Meridian denies the allegations of Paragraph 87 of the Amended Complaint.

88.     Meridian understands all claims for contributory infringement to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 88 of the Amended Complaint.

89.     Meridian understands all claims for contributory infringement to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 89 of the Amended Complaint.

90.     Meridian understands all claims for contributory infringement to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 90 of the Amended Complaint.

91.     Meridian understands all claims for contributory infringement to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph with respect to the allegations of contributory infringement. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 91 of the Amended Complaint relating to contributory infringement. Meridian further denies the remaining allegations of Paragraph 91 of the Amended Complaint.

## COUNT 3: [ALLEGED] DIRECT INFRINGEMENT OF THE '108 PATENT

92.     Meridian incorporates Paragraphs 81 through 91 of this Answer as if set forth here in full.

93.     Meridian denies the allegations of Paragraph 93 of the Amended Complaint.

94.     Meridian admits that Claim 1 of the '108 Patent recites: "1. A method of relocating birds within a structure, the method comprising: installing a bird relocation system, the bird relocation system comprising; at least one perimeter net, at least one trapping net, and at least one flushing device; wherein a top edge of either or both of the at least one perimeter net and at least one trapping net is positioned at or near a ceiling of the structure, and flushing the animal through the structure wherein the flushing device chases the bird toward the at least one perimeter net and into the perimeter net or the trapping net." Meridian denies the remaining allegations of Paragraph 94 of the Amended Complaint.

95.     Meridian denies the allegations of Paragraph 95 of the Amended Complaint.

96.     Meridian admits that Claim 2 of the '108 Patent recites: "2. The method of claim 1, wherein the at least one perimeter net is installed such that one side of the at least one perimeter net is proximal to one side of the structure." Meridian denies the remaining allegations of Paragraph 96 of the Amended Complaint.

97.     Meridian denies the allegations of Paragraph 97 of the Amended Complaint.

98.     Meridian admits that Claim 4 of the '108 Patent recites: "4. The method of claim 1, wherein the at least one perimeter net and at least one trapping net are mist nets."

99.     Meridian denies the allegations of Paragraph 99 of the Amended Complaint.

100.    Meridian admits that Claim 5 of the '108 Patent recites: "5. The method of claim 1, wherein either or both of the at least one perimeter net and at least one trapping net are attached to at least one telescoping pole."

101.    Meridian denies the allegations of Paragraph 101 of the Amended Complaint.

102.    Meridian admits that Claim 6 of the '108 Patent recites: "6. The method of claim 5, wherein the at least one telescoping pole comprises a means of attachment to a rafter or beam proximal to the ceiling of the structure."

103.    Meridian denies the allegations of Paragraph 103 of the Amended Complaint.

104.    Meridian admits that Claim 7 of the '108 Patent recites: "7. The method of claim 6, wherein the means of attachment comprises a hook."

105.    Meridian denies the allegations of Paragraph 105 of the Amended Complaint.

106.    Meridian admits that Claim 8 of the '108 Patent recites: "8. The method of claim 5, wherein the at least one telescoping pole comprises a first end and second end; a removable connector; a rope and pulley; and a cleat, and wherein the first end comprises a hook."

107.    Meridian denies the allegations of Paragraph 107 of the Amended Complaint.

108.    Meridian admits that Claim 11 of the '108 Patent recites: "11. A bird relocation system for relocating a bird in a structure, the system comprising: at least one perimeter net; at least one trapping net; at least one flushing device, and at least one telescoping pole, wherein either or both of the at least one perimeter net and the at least one trapping net are attached to at least one telescoping pole."

109.    Meridian denies the allegations of Paragraph 109 of the Amended Complaint.

110.    Meridian admits that Claim 12 of the '108 Patent recites: "12. The system of claim 11, wherein the at least one perimeter net and the at least one trapping net are mist nets."

111.    Meridian denies the allegations of Paragraph 111 of the Amended Complaint.

112.    Meridian admits that Claim 13 of the '108 Patent recites: "13. The system of claim 11, wherein the at least one telescoping pole comprises a means of attachment to a rafter or beam proximal to the ceiling of the structure."

113.    Meridian denies the allegations of Paragraph 113 of the Amended Complaint.

114.    Meridian admits that Claim 14 of the '108 Patent recites: "14. The system of claim 11, wherein the at least one telescoping pole comprises a first end and second end, a removable connector, a rope and pulley; and a cleat, and wherein the first end comprises a hook."

115.    Meridian denies the allegations of Paragraph 115 of the Amended Complaint.

116.    Meridian admits that Claim 17 of the '108 Patent recites: "17. A method of relocating birds within a structure, the method comprising: installing a bird relocation system, the bird relocation system comprising; at least one perimeter net, and at least one flushing device; wherein a top edge of the at least one perimeter net is positioned at or near a ceiling of the structure, and flushing the animal through the structure wherein the flushing device chases the bird toward the at least one perimeter net, wherein the at least one perimeter net is installed such that one side of the at least one perimeter net is proximal to one side of the structure." Meridian denies the remaining allegations of Paragraph 116 of the Amended Complaint.

117.    Meridian denies the allegations of Paragraph 117 of the Amended Complaint.

118.    Meridian denies the allegations of Paragraph 118 of the Amended Complaint.

119.    Meridian denies the allegations of Paragraph 119 of the Amended Complaint.

120.    Meridian denies the allegations of Paragraph 120 of the Amended Complaint.

121.    Meridian denies the allegations of Paragraph 121 of the Amended Complaint.

122.    Meridian denies the allegations of Paragraph 122 of the Amended Complaint.

123.    Meridian denies the allegations of Paragraph 123 of the Amended Complaint.

124.    Meridian denies the allegations of Paragraph 124 of the Amended Complaint.

125.    Meridian denies the allegations of Paragraph 125 of the Amended Complaint.

126.    Meridian denies the allegations of Paragraph 126 of the Amended Complaint.

## COUNT 4: [ALLEGED] INDIRECT INFRINGEMENT OF THE '108 PATENT

127.     Meridian incorporates Paragraph 1 through 126 of this Answer as if set forth here in full.

128.     Meridian denies the allegations of Paragraph 128 of the Amended Complaint.

129.     Meridian denies the allegations of Paragraph 129 of the Amended Complaint.

130.     Meridian denies the allegations of Paragraph 130 of the Amended Complaint.

131.     Meridian denies the allegations of Paragraph 131 of the Amended Complaint.

132.     Meridian denies the allegations of Paragraph 132 of the Amended Complaint.

133.     Meridian understands all claims for contributory infringement to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 133 of the Amended Complaint.

134.     Meridian understands all claims for contributory infringement to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 134 of the Amended Complaint.

135.     Meridian understands all claims for contributory infringement to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 135 of the Amended Complaint.

136.     Meridian understands all claims for contributory infringement to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph with respect to the allegations of contributory infringement. However, in the interest of completeness, to the

14

extent the claims are not dismissed, Meridian denies the allegations of Paragraph 136 of the Amended Complaint relating to contributory infringement. Meridian further denies the remaining allegations of Paragraph 136 of the Amended Complaint.

### COUNT 5: [ALLEGED] DIRECT INFRINGEMENT OF THE '683 PATENT

137.     Meridian incorporates Paragraphs 1 through 136 of this Answer as if set forth here in full.

138.     Meridian denies the allegations of Paragraph 138 of the Amended Complaint.

139.     Meridian admits that Claim 1 of the '683 Patent recites: "1. A bird relocation system for relocating a bird in a structure, the system comprising: at least one perimeter net;  wherein the at least one perimeter net is adapted to be positioned at or near a ceiling of the structure; and wherein the at least one perimeter net is attached to at least one telescoping pole comprising a means of attachment to a rafter or beam proximal to the ceiling of the structure."

140.     Meridian denies the allegations of Paragraph 140 of the Amended Complaint.

141.     Meridian admits that Claim 2 of the '683 Patent recites: "2. The system of claim 1, wherein the at least one perimeter net is a mist net." Meridian denies the remaining allegations of Paragraph 141 of the Amended Complaint.

142.     Meridian denies the allegations of Paragraph 142 of the Amended Complaint.

143.     Meridian admits that Claim 3 of the '683 Patent recites: "3. The system of claim 1, wherein the means of attachment comprises a hook." Meridian denies the remaining allegations of Paragraph 143 of the Amended Complaint.

144.     Meridian denies the allegations of Paragraph 144 of the Amended Complaint.

145.     Meridian admits that Claim 4 of the '683 Patent recites: "4. The system of claim 1, wherein the at least one telescoping pole comprises a first end and second end, a removable

connector, a rope and pulley; and a cleat, and wherein the first end comprises a hook." Meridian denies the remaining allegations of Paragraph 145 of the Amended Complaint.

146.     Meridian denies the allegations of Paragraph 146 of the Amended Complaint.

147.     Meridian admits that Claim 5 of the '683 Patent recites: "5. The system of claim 1, further comprising at least one trapping net." Meridian denies the remaining allegations of Paragraph 147 of the Amended Complaint.

148.     Meridian denies the allegations of Paragraph 148 of the Amended Complaint.

149.     Meridian admits that Claim 8 of the '683 Patent recites: "8. The system of claim 1, further comprising at least one flushing device." Meridian denies the remaining allegations of Paragraph 149 of the Amended Complaint.

150.     Meridian denies the allegations of Paragraph 150 of the Amended Complaint.

151.     Meridian denies the allegations of Paragraph 151 of the Amended Complaint.

152.     Meridian denies the allegations of Paragraph 152 of the Amended Complaint.

153.     Meridian denies the allegations of Paragraph 153 of the Amended Complaint.

154.     Meridian denies the allegations of Paragraph 154 of the Amended Complaint.

155.     Meridian denies the allegations of Paragraph 155 of the Amended Complaint.

156.     Meridian denies the allegations of Paragraph 156 of the Amended Complaint.

157.     Meridian denies the allegations of Paragraph 157 of the Amended Complaint.

158.     Meridian denies the allegations of Paragraph 158 of the Amended Complaint.

159.     Meridian denies the allegations of Paragraph 159 of the Amended Complaint.

**COUNT 6: [ALLEGED] INDIRECT INFRINGEMENT OF THE '374 PATENT**

160.     Meridian incorporates Paragraphs 1 through 159 of this Answer as if set forth here in full.

161.    Meridian understands all claims under Count 6 to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 161 of the Amended Complaint.

162.    Meridian understands all claims under Count 6 to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 162 of the Amended Complaint.

163.    Meridian understands all claims under Count 6 to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 163 of the Amended Complaint.

164.    Meridian understands all claims under Count 6 to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 164 of the Amended Complaint.

165.    Meridian understands all claims under Count 6 to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 165 of the Amended Complaint.

166.    Meridian understands all claims under Count 6 to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of

completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 166 of the Amended Complaint.

167. Meridian understands all claims under Count 6 to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 167 of the Amended Complaint.

168. Meridian understands all claims under Count 6 to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 168 of the Amended Complaint.

169. Meridian understands all claims under Count 6 to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 169 of the Amended Complaint.

170. Meridian understands all claims under Count 6 to be dismissed pursuant to Docket Entry No. 59, negating the need for a response to this Paragraph. However, in the interest of completeness, to the extent the claims are not dismissed, Meridian denies the allegations of Paragraph 170 of the Amended Complaint.

## **JURY DEMAND**

No response is required to Plaintiff's demand for a trial by jury. Meridian also demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Meridian denies that Plaintiff is entitled to any of the relief requested in the Prayer for Relief.

## DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Non-Infringement)

The accused products/instrumentalities and services do not infringe any valid and enforceable claim of U.S. Patent No. 10,251,374, either literally or under the doctrine of equivalents. Further, Meridian has not performed any act in violation of any rights belonging to Safe Haven.

The accused products/instrumentalities and services do not infringe any valid and enforceable claim of U.S. Patent No. 10,729,108, either literally or under the doctrine of equivalents. Further, Meridian has not performed any act in violation of any rights belonging to Safe Haven.

The accused products/instrumentalities and services do not infringe any valid and enforceable claim of U.S. Patent No. 11,064,683, either literally or under the doctrine of equivalents. Further, Meridian has not performed any act in violation of any rights belonging to Safe Haven.

### SECOND AFFIRMATIVE DEFENSE
### (Invalidity)

The claims of U.S. Patent No. 10,251,374 are invalid, ineligible, unenforceable, or void for failure to satisfy one or more of the requirements of 35 U.S.C. §§ 1 et seq., including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. For example, each claim is invalid as claiming concepts already known to the public at the time of the alleged invention. As another example, the claims are not eligible for patent because they are directed to ineligible subject matter.

19

Prior art that invalidates the asserted claims will be set forth in Meridian's invalidity contentions, amendments, and proposed amendments thereto.

The claims of U.S. Patent No. 10,729,108 are invalid, ineligible, unenforceable, or void for failure to satisfy one or more of the requirements of 35 U.S.C. §§ 1 et seq., including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. For example, each claim is invalid as claiming concepts already known to the public at the time of the alleged invention. As another example, the claims are not eligible for patent because they are directed to ineligible subject matter. Prior art that invalidates the asserted claims will be set forth in Meridian's invalidity contentions, amendments, and proposed amendments thereto.

The claims of U.S. Patent No. 11,064,683 are invalid, ineligible, unenforceable, or void for failure to satisfy one or more of the requirements of 35 U.S.C. §§ 1 et seq., including but not limited to 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. For example, each claim is invalid as claiming concepts already known to the public at the time of the alleged invention. As another example, the claims are not eligible for patent because they are directed to ineligible subject matter. Prior art that invalidates the asserted claims will be set forth in Meridian's invalidity contentions, amendments, and proposed amendments thereto.

### THIRD AFFIRMATIVE DEFENSE
#### (Prosecution History Estoppel)

Safe Haven is estopped, based on statements, representations, and admissions made during prosecution of the applications that led to the Asserted Patents, from asserting any interpretation of the claims of those patents that would be broad enough to cover any accused products/instrumentalities or service alleged to infringe those patents, either literally or under the doctrine of equivalents.

### FOURTH AFFIRMATIVE DEFENSE
### (Equitable Defenses)

Safe Haven's claims are barred, either in whole or in part, by the doctrine of waiver, estoppel, and/or unclean hands.

### FIFTH AFFIRMATIVE DEFENSE
### (Improper Inventorship)

Upon information and belief, U.S. Patent No. 10,251,374, U.S. Patent No. 10,729,108, and/or U.S. Patent No. 11,064,683 is unenforceable due to the alleged inventor, Mr. Derek Tolley, not having invented the purported inventors and/or to the extent that one or more of the actual inventors is not named as an inventor.

### SIXTH AFFIRMATIVE DEFENSE
### (No Equitable Entitlement to Injunctive Relief)

Safe Haven is not entitled to injunctive relief under any theory, including without limitation, because any alleged injury to Safe Haven is not immediate or irreparable, Safe Haven has an adequate remedy at law, and/or public policy concerns weigh against any injunctive relief.

### SEVENTH AFFIRMATIVE DEFENSE
### (Statutory Limitations on Damages)

Any claim by Safe Haven for damages is limited by 35 U.S.C. § 286 and/or § 287, including upon information and belief, Safe Haven is barred by 35 U.S.C. § 287 from recovering damages in this case due to Safe Haven's failure to mark. Safe Haven is also barred by 35 U.S.C. § 288 from recovering costs associated with this action.

### EIGHTH AFFIRMATIVE DEFENSE
### (No Willful Infringement)

Safe Haven is not entitled to enhanced damages under 35 U.S.C. § 284 because Safe Haven has failed to meet, and cannot meet as a matter of law, the requirements for willful infringement. Safe Haven has failed to state a claim for willful infringement for failing to identify any pre-suit

factual basis that Meridian had actual knowledge of or was willfully blind to the Asserted Patents or Meridian's alleged infringement.

## NINTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

Safe Haven's Complaint fails to state facts sufficient to constitute a claim upon which relief can be granted.

## TENTH AFFIRMATIVE DEFENSE
### (No Exceptional Case)

Safe Haven cannot prove that this is an exceptional case justifying an award of attorney's fees against Meridian pursuant to 35 U.S.C. § 285.

## COUNTERCLAIM

Defendant Meridian Wildlife Services, LLC ("Meridian"), by counsel and in accordance with Rules 13 and 19 of the *Federal Rules of Civil Procedure,* files this Counterclaim against  Safe Haven Wildlife Removal & Property Management Experts, LLC, d/b/a Safe Haven Avian Group & Wildlife Removal and Derek Lester Tolley (collectively, the "Counterclaim Defendants").

## NATURE OF THE ACTION

1.     This is a civil action to recover damages and permanent injunctive relief for breach of fiduciary duty, misappropriation of trade secrets, business conspiracy, tortious interference and patent infringement pursuant to 35 U.S.C. §§ 1, *et seq*.

## THE PARTIES

2.     Meridian is a Virginia limited liability company with its principal place of business in Christiansburg, Virginia.  At all times relevant, Meridian conducted and continues to conduct business and provide services in Virginia, including this judicial district.  Meridian is a company that provides bird removal and relocation services.

3.      Upon information and belief, Safe Haven Wildlife Removal & Property Management Experts, LLC ("Safe Haven") is a North Carolina limited liability company with its principal place of business in Winston-Salem, North Carolina.  Like Meridian, Safe Haven is a bird removal company.  Safe Haven engages in interstate commerce and promotes through its website that "We Service the Entire USA" and that Safe Haven provides services throughout "the entire USA including Alaska and Hawaii!"  Safe Haven transacts business in Virginia, contracts to supply services or things in Virginia and has caused tortious injury in Virginia by acts or omissions both inside and outside of the Commonwealth.

4.      Derek Tolley ("Tolley") is a former Meridian employee and the founding owner and Chief Executive Officer of Safe Haven.  Tolley resides in Winston-Salem, North Carolina.

5.      Since 2019, Tolley has engaged in business activities under the registered and assumed business name "Safe Haven Avian Group".  Tolley, acting as Safe Haven Avian Group, maintains a website that promotes and markets bird removal services throughout the United States, including Virginia.  At all operative times, Tolley, acting individually and as Safe Haven Avian group, was transacting business in Virginia.

**JURISDICTION AND VENUE**

6.      This Court has federal question jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because this action involves a claim arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq.*  This Court has supplemental jurisdiction over the additional state law claims in accordance with 28 U.S.C. § 1367.

7.      This Court further has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the parties have completely diverse citizenship and the amount in controversy in this action, exclusive of interest and costs, exceeds $75,000.  This Court has personal jurisdiction

over the Counterclaim Defendants on several independent grounds, including because they transact business in Virginia, contract to supply services or things in Virginia, and have caused tortious injury in Virginia by acts or omissions both inside and outside of the Commonwealth. Accordingly, jurisdiction is proper and authorized under Virginia Code § 8.01-328.1.

8.      Venue is appropriate in the Western District of Virginia under 28 U.S.C. §§ 1400 and 1391(b)(2) because Safe Haven has committed acts of infringement in this judicial district and maintains a regular and established place of business in this District.  Venue is further proper over all Counterclaim Defendants because all or a substantial portion of the events giving rise to Meridian's claims occurred in this district, including the Counterclaim Defendants' continuing misappropriation of Meridian's trade secrets.  Moreover, venue is proper in this District because Safe Haven consented to transfer venue of this action to this District.  *See* Dkt. 13.

## **ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

### **A.  Meridian's Business**

9.      Meridian is a professional company providing bird removal and wildlife management services to commercial clients located in Virginia and throughout the United States. After starting as a general wildlife control company in 2010, Meridian quickly expanded in the market to develop solutions for nuisance bird problems.  Meridian is an innovator and industry leader in these services with extensive experience assisting commercial clients throughout the United States with interior bird removal, exterior bird population reduction, wildlife relocation, nest removal and full facility inspection services.

10.      Meridian's founders developed and innovated methods, processes, technologies, and techniques to assist commercial clients in multiple states with non-lethal wildlife management

solutions through services that occur during normal business operations to substantially limit or eliminate business disruptions for each client.

11.     Meridian is at the forefront of bird mitigation services within the commercial and retail industry and provides those services to a variety of clients in many states, including Virginia and North Carolina.

12.     Meridian devotes substantial time and expense to developing and marketing its live capture and removal management services, but also to identifying the clients who need Meridian's service solutions.  Meridian heavily invests in its relationships with its clients, who are consistent referral sources for other new clients.

13.     Meridian also heavily invests in its technicians and its salesforce, assisting them in identifying key decision-makers for its clients or potential clients; cultivating those client and potential client relationships; learning the specialized needs and preferences of its clients and potential clients; advising clients on methods to prevent birds from entering into buildings and other spaces; and working out client-specific pricing and service arrangements.

14.     As part of its investment in its technicians and salesforce, Meridian trains its employees using Meridian's own trade secret information and the proprietary training that Meridian developed.

**B.  Tolley's Employment with Meridian**

15.     Derek Tolley began his employment with Meridian in 2012.  When he started working for Meridian, Tolley had no experience in commercial bird removal or wildlife management services, and brought no customers with him.  Instead, before his employment with Meridian, Tolley worked as a dental equipment sales representative and as a sales account manager for a textbook company.

16.     Tolley was an at-will employee with no ownership interest in Meridian and was subject to and benefited from Meridian's training in Meridian's methods, processes, and techniques for live bird capture and removal.

17.     During his employment with Meridian, Tolley had access to Meridian's confidential and proprietary information concerning its bird removal process, methodology, clients, business development efforts, and marketing materials, as well as Meridian's trade secrets and other valuable business information, including Meridian's strategies, institutional knowledge, client contracts, goodwill, Meridian's services and marketing strategies associated with those services, and Meridian's substantial investment toward its competitive strategies associated with those services and bird removal methodologies.

18.     Through his employment with Meridian, Tolley was also intimately involved in Meridian's operations and received significant training, resources, and support to develop good will and close advantageous business relationships with Meridian's clients and prospective clients.

19.     Because Tolley lacked any knowledge, skill, or experience in commercial wildlife control and bird removal services, Meridian trained, instructed, and taught Tolley Meridian's business practices and services in detail.  Tolley was trained extensively in Meridian's methods, processes, practices, and procedures, including the non-lethal capture techniques that Meridian used to improve the bird capture services provided to Meridian's customers.

20.     Meridian paid for and supported the appropriate licensing and certifications required for Tolley to perform bird capture and removal services in North Carolina.

21.     Tolley's initial responsibilities with Meridian included providing proprietary bird capture and removal services for Meridian's clients in North Carolina and Virginia, utilizing both lethal and non-lethal methods.   These initial responsibilities included interacting and

communicating with Meridian's clients to perform and coordinate that work, and performing post-removal assessments.  While performing these activities, Tolley acted as Meridian's agent under the direct supervision of Meridian.

22.     As Meridian trained Tolley in the skills and abilities needed to be successful in using Meridian's business model, Tolley received additional responsibilities that included identifying and marketing to potential customers for Meridian and developing and expanding work for Meridian's current customers.  These activities included communicating with Meridian's existing and potential clients and developing strategies to facilitate and support Meridian's efforts to acquire new and additional business from those customers.

23.     In his expanded sales and marketing role, Tolley obtained and had access to Meridian's highly confidential list of existing and potential customer contact information.  This compilation of information is unique and valuable, and is not generally known to or readily ascertainable by others outside of Meridian.

24.     Tolley also had access to other highly confidential Meridian information and the various databases that contain this information, such as customer data and contact information, customer surveys, buying habits of specific customers, pricing models, marketing strategies, business analysis of existing and potential customers, and other non-public documents and information related to Meridian's business, clients, client opportunities, and client relationship management.  This information is unique and valuable, is not generally known to or readily ascertainable by anyone outside of Meridian, and is essential in providing Meridian with a competitive advantage in the marketplace.  The disclosure, publication, and use of this information by others would harm Meridian and affords an unfair competitive advantage to anyone receiving

or using this information.  All of this information, if in the hands of a competitor, would allow that competitor to easily undercut Meridian's fees, attract Meridian's customers, and unfairly compete.

25.     Meridian devotes considerable time, effort, and resources to develop its non-public customer contact information, pricing, business strategies, post-service reports, and other confidential business information.  Meridian maintains this and other confidential information in a database with access restricted by a unique username and password that is terminated following an employee's departure.  Meridian takes reasonable measures to protect the value of its confidential information by prohibiting employees and customers from disseminating it, and by using authorized protection to limit access to proprietary and sensitive information.  Beginning in 2013 and continuing since that time, Meridian implemented confidentiality requirements for Meridian's employees and customers to guard and protect its proprietary and confidential information.  Meridian also restricts access to its proprietary, confidential, and trade secret information and discloses that information to Meridian employees on a need-to-know basis.

26.     As Meridian's employee and agent, Tolley owed Meridian fiduciary duties to act solely in Meridian's interests in all matters connected with or related to his employment with Meridian.  These duties included, but were not limited to, maintaining the confidentiality of Meridian's trade secrets, proprietary process information, and confidential business information, and not diverting existing or potential Meridian customers to others or himself without Meridian's knowledge and express authorization.

### C.  Meridian's Service Model

27.     While traditionally bird removal services resorted exclusively to the lethal method of shooting birds, Meridian began to develop a technique for the safe and live capture of birds.

These innovative techniques and processes included incorporating the use of mist netting with modified features developed by Meridian.

28.     At the same time, Meridian began analyzing specific behavior patterns that birds exhibit within closed structures and buildings, and developed methods, techniques and processes to assess and predict bird behavior within confined structures.  Meridian also developed and used this bird behavior assessment process to capture and remove birds for Meridian's customers.

29.     Over time, Meridian developed and refined these bird behavior models, the bird behavior assessment methods, techniques and processes and the systems for Meridian's bird capture and removal process, and fully transitioned from lethal methods to a non-lethal process for removing birds from commercial enterprises.

30.     Meridian's development and transition to its non-lethal capture method, together with Meridian's development of methods and techniques to model and assess bird behavior, used in conjunction with its non-lethal capture process, enabled Meridian to provide enhanced and more desirable wildlife removal services to its customers.  Those enhanced services included, but were not limited to, the ability to remove birds and other wildlife from commercial enterprises more safely and without requiring the business to close or otherwise interfere with the customer's normal business operations.

31.     Meridian's use, development, marketing, and application of its improved bird capture process through the use of specific bird behavior assessments and non-lethal methodology enabled Meridian to attract and expand its customer base and increase its business accordingly.

32.     Meridian's development of its live-capture process and methodology, including both the application of bird behavior assessments and the transition from a lethal to non-lethal process, occurred during the time that Tolley was a Meridian employee.  As an employee, Meridian

trained Tolley in the methods, use, and application of these bird behavior assessments and the non-lethal mist netting capture techniques that Meridian used to improve the bird removal services provided to its customers.  These bird assessment and capture methodologies were not industry standard at the time and were not public knowledge.

33.     Tolley was also directly involved in marketing efforts directed to Meridian's then existing and prospective customers as it related to Meridian's development and use of its non-lethal capture process and the methodology that reduced business interruptions and brought enhanced benefit to Meridian's actual or potential customers.

34.     In his position with Meridian, Tolley had significant interaction with Meridian's existing customers when utilizing the newly developed bird behavior assessments, using the  new non-lethal applications to remove birds from the customer's property, and thereafter determining whether Meridian's customers were satisfied with the work performed.  All this information, if in the hands of a competitor, would allow that competitor to easily undercut Meridian's fees, unfairly compete, and damage its business and future business prospects.

**D.  Tolley Misappropriates Trade Secrets and Confidential Information to Divert and Diminish Meridian's Business Opportunities**

35.     Tolley left Meridian's employment in April of 2014.

36.     Before he left his employment with Meridian, Tolley established his own bird removal company, Safe Haven, and created his competing business in June of 2013 while still employed by Meridian.  Thereafter, Tolley began directly competing with Meridian by, among other things, providing services to third parties through Safe Haven that included bird removal for commercial and retail customers.

37.     On April 19, 2019, the United States Patent and Trademark Office issued United States Patent No. 10,251,374 (the "'374 Patent") to Tolley.  Tolley did not provide notice to

Meridian when he filed the application for the '374 Patent, and neither the patent application nor the '374 Patent itself identifies Meridian.  On information and belief, Tolley has assigned his ownership and legal interest in the '374 Patent to Safe Haven.

38.     On August 4, 2020, the United States Patent and Trademark Office issued United States Patent No. 10,729,108 (the "'108 Patent") to Tolley.  Tolley did not provide notice to Meridian when he filed the application for the '108 Patent, and neither the patent application nor the '108 Patent itself identifies Meridian.  On information and belief, Tolley has assigned his ownership and legal interest in the '108 Patent to Safe Haven.

39.     On July 20, 2021 the United States Patent and Trademark Office issued United States Patent No. 11,064,683 (the "'683 Patent") to Tolley.  Tolley did not provide notice to Meridian when he filed the application for the '683 Patent, and neither the patent application nor the '683 Patent itself identifies Meridian.  On information and belief, Tolley has assigned his ownership and legal interest in the '683 Patent to Safe Haven.

40.      Issuance of the '374 Patent, the '108 Patent, and the '683 Patent and recordation of these Patents in the United States Patent and Trademark Office was the first public disclosure that Safe Haven was performing bird removal services for Safe Haven's customers by utilizing a non-lethal mist netting process that Meridian taught Tolley while he was Meridian's employee.

41.     Immediately upon forming Safe Haven, Tolley began soliciting Meridian's existing customers and potential customers that Meridian had identified as targets during the course of Tolley's employment with Meridian.  Beginning in 2013, when Tolley formed and began business operations through Safe Haven, and continuing since that time, the Counterclaim Defendants' have used Meridian's confidential and proprietary information to divert business to Safe Haven from Meridian's potential and existing customers, including customers that Tolley marketed and

serviced as a Meridian employee in Virginia and North Carolina.  These diverted customers include, but are not limited to, Walmart, Kroger, Harris Teeter, and Lowes.

42.     Safe Haven continues to receive income from Meridian's former customers on an ongoing basis.  Safe Haven also continues to solicit business from Meridian's existing customers in Virginia, North Carolina and other states.

43.     Upon information and belief, Tolley and Safe Haven have and continue to use Meridian's confidential information and trade secrets including, but not limited to, Meridian's bird behavior assessment techniques and Meridian's bird capture methodologies, to unfairly compete with Meridian.  The Counterclaim Defendants' misappropriation and wrongful use of Meridian's confidential information and trade secrets is ongoing.

44.     As a result of the Counterclaim Defendants' actions, Meridian has and will continue to suffer substantial damage to its business and operations.

45.     Safe Haven and Tolley have and continue to engage in acts of illegal conduct that have and continue to damage Meridian despite specific knowledge and notice of their obligations to preserve Meridian's confidential, proprietary, and trade secret information.

46.     Specifically, Safe Haven sanctioned the use of Meridian's confidential and proprietary information by not prohibiting its employees, including Tolley, from using it.

47.     Safe Haven also encouraged Tolley and other employees to use the confidential, proprietary, and trade secret information taken from Meridian.

48.     Tolley has knowingly used Meridian's confidential, proprietary, and trade secret information, with the knowledge of Safe Haven, in order to directly compete with Meridian to Meridian's detriment.

49.    In doing so, Tolley has shared Meridian's confidential, proprietary, and trade secret information with Safe Haven to Meridian's detriment.

50.    Safe Haven is using Meridian's confidential, proprietary, and trade secret information to generate increased business opportunities for itself.

**E. Meridian's Patents[2]**

51.    Subsequent to developing certain non-lethal live capture methods, Meridian filed patent applications covering certain non-proprietary aspects of those methods.  Those patents applications resulted in to issued U.S. Patents—U.S. Patent No. 9,943,073 ("'073 Patent") and U.S. Patent No. 10,154,663 ("'663 Patent").

52.    The '073 Patent, entitled "Indoor Live Bird Capture System," which issued on April 17, 2018, names inventors David Henry Brugh and Brian Chandler Burke.  The '073 Patent issued from U.S. Patent Application Serial No. 15/048,231, filed on February 19, 2016.  A true and accurate copy of the '073 Patent is attached hereto as **Exhibit A**.

53.    Meridian is the owner and assignee of the entire right, title, and interest in and to the '073 Patent and holds the right to sue and recover damages for infringement thereof.

54.    The '663 Patent, entitled "Indoor Live Bird Capture System," which issued on December 18, 2018, names inventors David Henry Brugh and Brian Chandler Burke.  The '663 Patent issued from U.S. Patent Application Serial No. 15/851,925, filed on December 22, 2017.  A true and accurate copy of the '663 Patent is attached hereto as **Exhibit B.**

---

[2]    All descriptions of the inventions are presented to give a general background of those inventions.  These statements are not intended to be used, nor should be used, for purposes of patent claim interpretation.  Meridian presents these statements subject to, and without waiver of, its right to argue that claim terms should be construed in a particular way, as contemplated by claim interpretation jurisprudence and the relevant evidence.

55.     Meridian is the owner and assignee of the entire right, title, and interest in and to the '663 Patent and holds the right to sue and recover damages for infringement thereof.

## COUNT I — <u>BREACH OF FIDUCIARY DUTY OF LOYALTY</u>
### (Derek Tolley)

56.     Meridian adopts and incorporates the previous allegations stated in Paragraphs 1 through 55.

57.     As Meridian's agent and employee, Tolley owed, and continues to owe, Meridian fiduciary duties that include, but are not limited to, the duties of loyalty and good faith.

58.     Tolley breached and violated his fiduciary duties to Meridian by engaging and continuing to engage in his improper activities, including but not limited to, by promoting his own interests and Safe Haven's interests over those of Meridian, by diverting Meridian's potential clients to himself and his business, Safe Haven, by misappropriating, siphoning away and using Meridian's confidential information, by misappropriating, siphoning away and using Meridian's proprietary trade secrets, including Meridian's bird behavior assessment techniques and methods and its non-lethal bird removal process, and by otherwise acting contrary to Meridian's best interest.  Tolley has intentionally, materially, and directly violated the fiduciary and common law duties he owed to Meridian and still owes to Meridian.

59.     During his employment with Meridian, and without Meridian's knowledge, Tolley took direct actions to compete against Meridian by planning and conspiring to siphon away opportunities from Meridian so that Tolley could pursue those opportunities with his new venture, Safe Haven.

60.     During and after his employment with Meridian, Tolley provided Safe Haven — Meridian's competitor — with Meridian's confidential, proprietary, and trade secret information.

34

61.     Tolley appropriated and used Meridian's confidential, proprietary, and trade secret information for the purpose of furthering the business interests of Safe Haven, Meridian's competitor, and to give himself and Safe Haven an unlawful competitive advantage in the marketplace.

62.     As a proximate cause of Tolley's unlawful conduct, Meridian has suffered and will continue to suffer certain damages that cannot be reasonably ascertained.

63.     Unless restrained by this Court, Tolley will continue his unlawful actions and Meridian will be irreparably harmed.

64.     Meridian has no adequate remedy at law and is, therefore, entitled to an injunction enjoining Tolley from engaging in further unlawful acts against Meridian.

65.     As a direct and proximate result of Tolley's unlawful actions, Meridian is also entitled to monetary damages, interest, past pecuniary expenses, future pecuniary expenses, the costs of suit, and reasonable attorney fees.

### COUNT II — <u>TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTS AND PROSPECTIVE BUSINESS ADVANTAGE</u>
**(Tolley and Safe Haven)**

66.     Meridian adopts and incorporate the previous allegations stated in Paragraphs 1 through 65.

67.     Meridian had active contracts with customers and the expectancy of future business with prospective customers in North Carolina and other states that the Counterclaim Defendants diverted, including, but not limited to, Walmart, Harris Teeter, Kroger, and others.

68.     Safe Haven's diversion of these existing business relationships and expectancies interfered with and caused each customer to terminate their contractual relationship with Meridian.

69.     At the time the Counterclaim Defendants interfered with the existing contractual relationship between Meridian and its customers, the Counterclaim Defendants had actual knowledge of the existing contractual relationship and business expectancy between Meridian and these customers.

70.     Meridian also had the expectancy of maintaining client relationships with its existing clients and obtaining future business from its existing clients, including those for whom Tolley performed services while a Meridian employee.

71.     The Counterclaim Defendants knew of the existence of Meridian's prospective and existing customer contracts through and as a direct result of Tolley's knowledge and work activities as a Meridian employee.

72.     The Counterclaim Defendants intentionally interfered with Meridian's expectancy of prospective and existing contracts through actions that include improper means and methods to divert and appropriate those business expectancies.

73.     The Counterclaim Defendants' improper actions include, but are not limited to, using Meridian's confidential and proprietary trade secrets and business information to secure business for themselves, and by and through Tolley's breach and violation of his fiduciary duties to Meridian.

74.     The Counterclaim Defendants' interference was malicious, without privilege or justification, and intended to harm Meridian and its business interests by taking Meridian's viable customer relationships and opportunities.

75.     Absent Safe Haven and Tolley's intentional and knowing misconduct, Meridian would have realized the business expectancy it had with its customers and prospective customers.

76.    As an industry leader in commercial bird removal and mitigation services, Meridian could have acquired and maintained Walmart, Harris Teeter, Kroger, and others, as customers in Virginia, North Carolina, and elsewhere absent the Counterclaim Defendants' intentional misconduct.

77.    Meridian has suffered and will continue to suffer harm and damages as a result of the Counterclaim Defendants' actions.

### COUNT III — <u>BUSINESS CONSPIRACY</u>
### (Tolley and Safe Haven)

78.    Meridian adopts and incorporates the previous allegations stated in Paragraphs 1 through 77.

79.    Under Virginia. Code § 18.2-500, "[a]ny person who [is] injured in his reputation, trade, business, or profession by reason of a violation of § 18.2-499" may seek relief in a civil court.

80.    Virginia. Code § 18.2-499 imposes liability on "[a]ny two or more persons who combine, associate, agree, mutually undertake, or act in concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business, or profession by any means[.]"

81.    Safe Haven and Tolley are two or more "persons" (defined in Virginia. Code § 1-230 to include "any individual, corporation, partnership, association, cooperative, limited liability company, trust, joint venture, government, political subdivision, or any other legal or commercial entity and any successor, representative, agent, agency, or instrumentality thereof") that combined, associated, agreed, mutually undertook or acted in concert together within the meaning of Virginia. Code § 18.2-499.

82.     Acting in concert, Safe Haven and Tolley coordinated to unlawfully and unethically misappropriate Meridian's proprietary bird behavior assessment techniques and methods and its proprietary process for non-lethal bird capture and removal services, and to utilize that proprietary information and acquired knowledge of Meridian's existing customers to unlawfully and unethically divert Meridian's existing and potential customers to Safe Haven, and to interfere with Meridian's lawful business expectancies by stealing Meridian's business in violation of Virginia Code § 18.2-499.

83.     Counterclaim Defendants' unlawful acts used to accomplish their objectives include, but are not limited to, breaching their duties to Meridian and accessing, copying and appropriating Meridian's proprietary information and trade secrets.  Through those actions, the Counterclaim Defendants acted intentionally, purposefully and without lawful justification.

84.     The Counterclaim Defendants acted willfully and maliciously to cause injury to Meridian in its reputation, trade, business, and profession by conspiring to: (i) misappropriate Meridian's confidential information and trade secrets; (ii) convert Meridian's trade secrets and property; and (iii) tortuously interfere with Meridian's prospective business advantage.

85.     The Counterclaim Defendants' conspiracy is ongoing and has harmed Meridian by, among other things, reducing Meridian's customer revenue and causing Meridian to lose existing and potential customer business. Meridian has been and will continue to be damaged by the Counterclaim Defendants' wrongful conduct.

86.     Based upon the Counterclaim Defendants' illegal conduct, Meridian is entitled to the relief provided by §§ 18.2-499(A) and § 18.2-500 including but not limited to (i) three times Meridian's damages; (ii) Meridian's actual damages and the Counterclaim Defendants' profits; (iii) punitive damages; and (iv) Meridian's attorneys' fees and costs.

**COUNT IV — <u>VIOLATION OF THE DEFEND TRADE SECRETS ACT,</u>**
**<u>18 U.S.C. § 1831 *et seq.*</u>**
**(Tolley and Safe Haven)**

87.     Meridian adopts and incorporates the previous allegations stated in Paragraphs 1 through 86.

88.     Meridian owned and possessed certain confidential and proprietary information that Meridian used or intended to use in providing services to its customers in interstate commerce. This confidential and proprietary information includes, but is not limited to, methods, techniques, and processes to assess and predict bird behavior within confined structures, proprietary training in bird behavior patterns and assessments, Meridian's proprietary bird capture and removal practices, methods and techniques, Meridian's confidential customer database, pricing, confidential customer contact information, and customer buying preferences and history (collectively, "Trade Secrets").

89.     During his employment with Meridian, and as a direct result of that employment, Tolley had access to and acquired certain Trade Secrets owned and controlled by Meridian.  After Tolley left employment with Meridian, the Counterclaim Defendants misappropriated the Trade Secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*

90.     Upon information and belief, Tolley disclosed and continues to disclose the Trade Secrets to Safe Haven's employees, representatives, and agents knowing that he acquired this information only by virtue of his employment with Meridian, which created a duty to maintain the secrecy and confidentiality of Meridian's Trade Secrets.

91.     Upon information and belief, the Counterclaim Defendants, either themselves or through Safe Haven's employees, representatives and agents, acting without Meridian's knowledge or consent, knowingly and intentionally misappropriated, siphoned away, used and

misused Meridian's Trade Secrets and proprietary business information to contact and service Meridian's existing and prospective customers. These customers include, but are not limited to, Walmart, Kroger, Harris Teeter, and Lowes.

92.     Upon information and belief, the Counterclaim Defendants also knowingly and intentionally used and continue to use the misappropriated Trade Secrets to directly compete with Meridian and to take unfair competitive advantage of Meridian's business when selling services to Meridian's existing and prospective customers in various states including Florida and North Carolina.

93.     The Counterclaim Defendants did not acquire the misappropriated Trade Secrets through independent development or reverse engineering, and did not attain the Trade Secrets from another person with a right to disclose the Trade Secrets.

94.     The Trade Secrets derive independent, actual, and potential commercial value from not being generally known or readily available through independent development or reverse engineering by others, who can obtain economic value from their disclosure and use.

95.     Meridian stored and maintained the Trade Secrets on Meridian's password protected company computers provided to Meridian's employees, including Tolley.

96.     During the time he was employed with Meridian, Tolley had access to Meridian's password protected computer system that held the Trade Secrets, and in some cases also possessed hard copies of Trade Secrets belonging solely to Meridian.

97.     Meridian makes significant efforts that are reasonable under the circumstances to maintain the confidentiality of its Trade Secrets. Meridian uses password protection and limited access for the computer systems containing the Trade Secrets, limited hard copy distribution of Trade Secrets to select employees, and requires that all employees that separate from employment

40

with Meridian return the company's property, computers, and any information that may contain or be derived from the Trade Secrets.

98.     The Counterclaim Defendants' past actions and ongoing conduct in acquiring, disclosing and using the Trade Secrets constitute violations of the DTSA, 18 U.S.C. § 1831 *et seq.*

99.     As a direct and proximate result of the Counterclaim Defendants' misappropriation of Meridian's Trade Secrets, Meridian has incurred monetary damage and injury.  Meridian is entitled to recovery from the Counterclaim Defendants, jointly and severally, the actual damages incurred as a result of their misappropriation under the DTSA, 18 U.S.C. § 1831 *et seq.*

100.     The Counterclaim Defendants' conduct and actions in misappropriating Meridian's Trade Secrets is both willful and wanton, and entitles Meridian to an award of punitive damages and reasonable attorneys' fees under the DTSA, 18 U.S.C. § 1831 *et seq.*

### COUNT V — <u>MISAPPROPRIATION OF TRADE SECRETS UNDER VIRGINIA'S UNIFORM TRADE SECRETS ACT, § 59.1-336, *et seq.*</u>
**(Tolley and Safe Haven)**

101.     Meridian adopts and incorporates the previous allegations stated in Paragraphs 1 through 100.

102.     During his employment, Tolley had access to and acquired certain confidential and proprietary information that constituted Meridian's owned Trade Secrets.  This information included (i) Meridian's development and use of the non-lethal process for removing birds from retail and commercial enterprises, including Meridian's unique application of bird behavior analysis and mist netting in that process; (ii) Meridian's bird behavior assessment methods, techniques, and processes; and (iii) Meridian's compiled information for both existing and potential customers, including Meridian's confidential customer database, pricing, confidential customer contact information, and customer buying preferences and history.

103.    That information: (i) is not known outside Meridian; (ii) is known only by Meridian's employees, including Tolley and others involved in Meridian's business; (iii) is subject to reasonable measures to guard the secrecy of the information, including Meridian's policies and procedures; (iv) is valuable; and (v) is difficult for others to properly acquire and independently duplicate.

104.    Under the Virginia Uniform Trade Secrets Act, Virginia Code § 59.1-336 *et seq.* ("VUTSA"), a person or entity misappropriates trade secrets if they acquire the secrets while knowing or having reason to know that the secret was acquired by improper means.

105.    Under the VUTSA, misappropriation also includes the disclosure or use of a trade secrets without consent by someone who used improper means to acquire knowledge of the trade secret.

106.    The Counterclaim Defendants, including Tolley, owed Meridian a duty to maintain the secrecy of Meridian's Trade Secret and proprietary information, and that duty continues.  At the time Tolley disclosed or used Meridian's information, the Counterclaim Defendants knew or should have known that they acted without Meridian's consent or permission.

107.    Tolley had actual knowledge that the confidential and proprietary information that he obtained during his employment with Meridian constituted Meridian's Trade Secrets and Tolley had actual knowledge that disclosing those Trade Secrets to Safe Haven would be unlawful.

108.    Safe Haven has actual knowledge that that confidential and proprietary information given to it by Tolley constitutes Meridians' Trade Secrets.

109.    Despite this knowledge, Safe Haven continues to use Meridian's Trade Secrets in an effort to better compete with Meridian.

110.    Despite knowing all of this, Tolley continues to use Meridian's Trade Secrets in order to further and improve Safe Haven's attempts to directly compete with Meridian and take an unfair competitive advantage in the marketplace.

111.    Despite knowing all of this, Safe Haven failed to take any action to prevent any further unlawful, wrongful, and tortious conduct by Tolley.

112.    As a result of Safe Haven's and Tolley's unlawful conduct, Meridian has and will continue to suffer irreparable harm and damages including loss of business, as well as loss of competitive advantage, loss of the value of its trade secrets, and loss of goodwill, as harm to its legitimate business interest.  The harm suffered by Meridian is continuing and cannot be fully compensated by money damages alone, and thus, Meridian is entitled to preliminary and permanent injunctive relief under the VUTSA.

113.    The Counterclaim Defendants' actions were willful, intentional and malicious in injuring Meridian and its business, thus entitling Meridian to an award of attorneys' fees and punitive damages, in addition to compensatory damages, as provided under the VUTSA.

## COUNT VI — <u>INFRINGEMENT OF THE '073 PATENT</u>
### (Safe Haven)

114.    Meridian adopts and incorporates the previous allegations stated in Paragraphs 1 through 113.

115.    The '073 Patent is valid and enforceable.

116.    Meridian owns the entire right, title, and interest to the '073 Patent.

117.    Safe Haven has directly infringed and continues to directly infringe at least Claim 1 of the '073 Patent–both literally and under the doctrine of equivalents–by making, using, selling, and/or offering for sale products and services that embody the inventions disclosed in the '073 Patent, including at least Safe Haven's Interior Bird Removal service.

118.    Safe Haven describes its Interior Bird Removal service as using its "patented mist netting process."  *See* **Exhibit C**.  And that "[i]nterior birds are safely and effectively removed using Safe Haven's patented mist netting process."  *See* **Exhibit D.**

119.    Moreover, Safe Haven confirmed that it "removes [a] bird, using the methods described in the '374 Patent, '108 Patent, and '683 Patent" in its Amended Complaint in this Case. *See* Dkt. 11 at ¶ 20.  Each element of the '073 Patent is found in '374 Patent, '108 Patent, and/or '683 Patent.

120.    A chart evidencing Safe Haven's infringement of Claim 1 of the '073 Patent is attached hereto as **Exhibit E**.

121.    Safe Haven also indirectly infringed the continues to infringe at least Claim 1 of the '073 Patent with knowledge of or being willfully blind that its actions constitute infringement, at least as of the filing of this Complaint.

122.    On information and belief, Safe Haven has had knowledge of or was willfully blind to the '073 Patent and that its actions constitute infringement prior to the filing of this Counterclaim.  For example, the '073 Patent is listed on the face of Safe Haven's '374 Patent, '683 Patent, and '108 Patent and was cited by the examiner as prior art during prosecution of the '374 Patent.

123.    Safe Haven has induced and continues to induce infringement of the '073 Patent by providing information and instruction on using the accused method in an infringing manner evidenced at least by training its employees, contractors, and representatives in capturing flying vertebrate in accordance with the '073 Patent's method.  Safe Haven took affirmative actions that induced these independent contracts, affiliates, partners, and other companies to violate the '073 Patent.

124.    Safe Haven contributes to the infringement of the '073 Patent by others by training its employees and contractors in at least its Interior Bird Removal service, which is especially made for infringing use, with the knowledge that such use is infringing, and with the knowledge that its products and services are part to such infringing use. Indeed, Safe Haven's Interior Bird Removal service is especially made and/or especially adapted for use in infringing Meridian's '073 Patent. Safe Haven's Interior Bird Removal service is not a stable article or commodity and lacks a substantial non-infringing use.

125.    Despite its knowledge of the '073 Patent, Safe Haven infringed and continues to infringe the '073 Patent.  Accordingly, Safe Haven's infringement has been willful.

126.    As a result of Safe Haven's infringement of the '073 Patent, Meridian has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, Safe Haven's infringement will continue, resulting in further irreparable harm to Meridian.

127.    Meridian is entitled to recover damages from Safe Haven not less than a reasonable royalty adequate to compensate for the infringement.

128.    Safe Haven's unlawful actions have caused, and will continue to cause, Meridian irreparable harm to its business and reputation unless enjoined.

### COUNT VII — <u>INFRINGEMENT OF THE '663 PATENT</u>
### (Safe Haven)

129.    Meridian adopts and incorporates the previous allegations stated in Paragraphs 1 through 128.

130.    The '663 Patent is valid and enforceable.

131.    Meridian owns the entire right, title, and interest to the '663 Patent.

132.    Safe Haven has directly infringed and continues to directly infringe at least Claim 1 of the '663 Patent–both literally and under the doctrine of equivalents–by making, using, selling, and/or offering for sale products and services that embody the inventions disclosed in the '663 Patent, including at least Safe Haven's Interior Bird Removal service.

133.    Safe Haven describes its Interior Bird Removal service as using its "patented mist netting process."  *See* **Exhibit C**.  And that "[i]nterior birds are safely and effectively removed using Safe Haven's patented mist netting process."  *See* **Exhibit D**.

134.    Moreover, Safe Haven confirmed that it "removes [a] bird, using the methods described in the '374 Patent, '108 Patent, and '683 Patent" in its Amended Complaint in this Case. *See* Dkt. 11 at ¶ 20.  Each element of the '663 Patent is found in '374 Patent, '108 Patent, and/or '683 Patent.

135.    A chart evidencing Safe Haven's infringement of Claim 1 of the '663 Patent is attached hereto as **Exhibit F**.

136.    Safe Haven also indirectly infringed and continues to infringe at least Claim 1 of the '663 Patent with knowledge of or being willfully blind that its actions constitute infringement, at least as of the filing of this Complaint.

137.    On information and belief, Safe Haven has had knowledge of or was willfully blind to the '663 Patent and that its actions constitute infringement prior to the filing of this Counterclaim.  For example, the '663 Patent is listed on the face of Safe Haven's '683 Patent and '108 Patent.

138.    Safe Haven has induced and continues to induce infringement of the '663 Patent by providing information and instruction on using the accused device in an infringing manner evidenced at least by training its employees, contractors, and representatives in capturing flying

vertebrate in accordance with the '663 Patent's device. Safe Haven took affirmative actions that induced these independent contracts, affiliates, partners, and other companies to violate the '663 Patent.

139. Safe Haven contributes to the infringement of the '663 Patent by others by training its employees and contractors in at least its Interior Bird Removal service, which is especially made for infringing use, with the knowledge that such use is infringing, and with the knowledge that its products and services are part to such infringing use. Indeed, Safe Haven's Interior Bird Removal service is especially made and/or especially adapted for use in infringing Meridian's '663 Patent. Safe Haven's Interior Bird Removal service is not a stable article or commodity and lacks a substantial non-infringing use.

140. Despite its knowledge of the '663 Patent, Safe Haven infringed and continues to infringe the '663 Patent. Accordingly, Safe Haven's infringement has been willful.

141. As a result of Safe Haven's infringement of the '663 Patent, Meridian has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law. Unless enjoined by this Court, Safe Haven's infringement will continue, resulting in further irreparable harm to Meridian.

142. Meridian is entitled to recover damages from Safe Haven not less than a reasonable royalty adequate to compensate for the infringement.

143. Safe Haven's unlawful actions have caused, and will continue to cause, Meridian irreparable harm to its business and reputation unless enjoined.

## **DEMAND FOR JURY TRIAL**

Meridian respectfully requests a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, as a result of the Counterclaim Defendants' wrongful actions, Meridian seeks an order from this Court entering judgment in its favor and against the Counterclaim Defendants on the above Counts and granting the following relief:

A.   Entering judgment on the Counterclaims, including all claims, causes of action, and requests for relief therein, in favor of Meridian and against the Counterclaim Defendants;

B.   Requiring the Counterclaim Defendants to pay Meridian's actual and compensatory damages, plus past and future pecuniary damages;

C.   Requiring the Counterclaim Defendants to disgorge or return to Meridian all financial benefits Safe Haven and Tolley received as a result of their unlawful conduct and to pay Meridian the amount by which they were unjustly enriched through misappropriating Meridian's trade secrets;

D.   Requiring the Counterclaim Defendants to pay treble and punitive damages consistent with Virginia Code §§ 18.2-499 and 500, as well as its attorneys' fees and costs;

E.   Awarding Meridian the following injunctive relief:

a.   Requiring Safe Haven and Tolley to turn over all electronic and tangible materials that contain Meridian's confidential and proprietary information and requiring the Counterclaim Defendants to permit Meridian to inspect their personal and work devices, including laptops, desktops, and smartphones, any and all portable storage devices, including thumb drives, disk and external hard drives, and personal and work e-mail accounts to ensure that they are no longer in possession of Meridian's confidential and proprietary information;

      b.   Enjoining the Counterclaim Defendants from utilizing Meridian's trade secrets and other confidential or proprietary information, including but not limited to Meridian's confidential customer information and proprietary bird removal process and methodologies;

      c.   Directing the Counterclaim Defendants to refrain from any dealings with all Meridian customers and clients that the Counterclaim Defendants improperly solicited to end, terminate or alter their relationships with Meridian;

F.   Entering judgment that Safe Haven infringes the '073 Patent and '663 Patent;

G.   Entering judgment that Safe Haven's infringement of the '073 Patent and '663 Patent has been and continues to be willful;

H.   Entering judgment against Safe Haven, awarding Meridian actual damages in an amount sufficient to compensate Meridian for Safe Haven's direct and indirect infringement of the '073 Patent and '663 Patent, until such time as Safe Haven ceases its infringing conduct;

I.   Entering judgment against Safe Haven, awarding Meridian enhanced damages pursuant to 35 U.S.C. § 284;

J.   Entering a determination this is an exceptional case, and an aware to Meridian of its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

K.   Entering an order for an accounting of Safe Haven's acts of infringement;

L.   Requiring the Counterclaim Defendants to pay Meridian attorneys' fees and punitive damages, in addition to compensatory damages, as provided under Virginia Code § 59.1-336 *et seq*;

M.  Requiring the Counterclaim Defendants to pay Meridian pre-judgment and post-judgment interest on any damages awarded; and

N.  Providing any other award to Meridian of such further and additional relief, whether legal or equitable that Meridian requests, that the Court determines Meridian to be entitled, or that the Court deems just and proper.

Dated this 26th day of May, 2023.

**MERIDIAN WILDLIFE SERVICES LLC, d/b/a MERIDIAN BIRD REMOVAL, INC.,**

/s/ David W. Hearn
David W. Hearn (VSB No. 37437)
Sands Anderson PC
1111 East Main Street, Suite 2400
Richmond, VA  23219-1998
804-648-1636 – phone
804-783-7291 – fax
dhearn@sandsanderson.com

Siraj M. Abhyankar
(GA Bar No. 484680)
ALSTON & BIRD LLP
One Atlantic Center
1201 W Peachtree St NE, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7687
Fax: (404) 253-8887
shri.abhyankar@alston.com

Lauren N. Griffin
(NC Bar No. 54766)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Telephone: (704) 444-1059
Fax: (704) 444-1935
lauren.griffin@alston.com
*Counsel for Defendant*
*Meridian Wildlife Services, LLC d/b/a*
*Meridian Bird Removal, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 26th day of May 2023, I electronically filed the foregoing

with the Clerk of the Court using the Court's CM/ECF system, which will send a notification of

such filing ("NEF") to all counsel of record.

/s/ David W. Hearn_____