IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SAFE HAVEN WILDLIFE REMOVAL<br>AND PROPERTY MANAGEMENT<br>EXPERTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MERIDIAN WILDLIFE SERVICES<br>LLC, d/b/a Meridian Bird Removal Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | Civil Case No. 7:21-cv-00577 |
| | ) | |
| MERIDIAN WILDLIFE SERVICES<br>LLC, d/b/a Meridian Bird Removal, Inc., | ) | By: Elizabeth K. Dillon<br>     United States District Judge |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAFE HAVEN WILDLIFE REMOVAL<br>AND PROPERTY MANAGEMENT<br>EXPERTS, LLC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DEREK LESTER TOLLEY d/b/a<br>SAFE HAVEN AVIAN GROUP &<br>WILDLIFE REMOVAL, | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

## MEMORANDUM OPINION

This case arises out of an ongoing patent-infringement suit that Safe Haven Wildlife

Removal and Property Management Experts (Safe Haven) brought against Meridian Wildlife

Services (Meridian) on June 25, 2021.  (*See* Dkt. No. 1.)  Meridian brought a counterclaim

against Safe Haven and Derek Tolley, Safe Haven's founder, on May 26, 2023, alleging claims of

breach of fiduciary duty, tortious interference with contract and business expectancies, business conspiracy, violations of the Virginia Uniform Trade Secrets Act and Defend Trade Secrets Act, and patent infringement.[1]  Pending before the court is Safe Haven and Derek Tolley's motion to dismiss (Dkt. No. 68), in which they seek dismissal of Counts I through V of Meridian's counterclaim as well as Meridian's requests for injunctive relief (Dkt. No. 64).  The matter has been fully briefed, a hearing was held on the motion, and it is ripe for resolution.  For the reasons stated below, the court will grant the motion in part and deny it in part.

## I.  BACKGROUND

Meridian provides bird removal and wildlife management services to commercial clients across the United States, including in Virginia.  (Countercl. ¶ 9, Dkt. No. 64.)  Meridian describes itself as "an innovator and industry leader in these services with extensive experience assisting commercial clients throughout the United States with interior bird removal, exterior bird population reduction, wildlife relocation, nest removal and full facility inspection services." (*Id.*)  Meridian states that it devotes substantial time to developing its relationships with its commercial clients; it also provides significant training and field experience to its technicians and salesforce using its trade secret information and proprietary training methods, including bird behavior analysis and mist netting to capture birds in commercial buildings.  (*Id.* ¶¶ 12–13.)

When Tolley began working for Meridian in 2012, he purportedly did not have any experience in commercial bird removal or wildlife management services.  (*Id.* ¶ 15.)  Tolley began his role at Meridian as a technician in its bird removal and wildlife management work but eventually received additional responsibilities that included communicating with current clients and building Meridian's client pool.  (*Id.* ¶¶ 21–22.)  Throughout his employment with Meridian,

---

[1]  Tolley and Safe Haven do not move to dismiss Meridian's patent claims.

Tolley was "intimately involved" with its operations and received significant training and other support to develop his skills and business relationships with clients.  (*Id.* ¶ 18.)  Meridian reports that much of the development of its bird behavior analysis and trapping methods occurred during Tolley's employment.  (*Id.* ¶ 32.)  In his role, Tolley had access to Meridian's confidential and proprietary information as well as its trade secrets and customer information.  (*Id.* ¶¶ 17–18.)

Tolley founded his own bird removal company, Safe Haven, in June 2013 while still employed by Meridian; Tolley did not leave Meridian until April 2014.  (*Id.* ¶¶ 35–36.) Meridian claims that from the time Tolley founded Safe Haven, he has allegedly used Meridian's proprietary information for his and Safe Haven's benefit.  (*Id.* ¶ 36.)  Meridian alleges that "immediately" upon forming Safe Haven in June 2013, Tolley began soliciting Meridian's existing and potential customers and using Meridian's confidential and proprietary information to divert business to Safe Haven from Meridian's potential and existing customers.  (*Id.* ¶ 41.) Meridian contends that Tolley continues to receive income from Meridian's former customers and continues his efforts to divert customers from Meridian to Safe Haven.  (*Id.* ¶ 42.)  Meridian also accuses Tolley and Safe Haven of misappropriating Meridian's behavior analysis methods and non-lethal animal trapping methods.  (*Id.* ¶ 43.)  These alleged misappropriations have purportedly given Safe Haven an unfair competitive advantage in the marketplace and have caused Meridian to lose business.  (*Id.* ¶ 44.)

Following Tolley's departure from Meridian, he was issued several patents for animal capture systems and methods.  (*Id.* ¶¶ 40, 43.)  Tolley did not provide notice to Meridian of these patents, and each patent assigns ownership and legal interest to Safe Haven.  (*Id.* ¶¶ 37–39.) Meridian contends that the filing of Tolley's first patent on April 19, 2019, was the first "public disclosure" that Safe Haven was using mist netting to perform bird removal services.  (*Id.* ¶ 40.)

Meridian also filed its own patents for indoor non-lethal bird capture systems in 2016 and 2018 and alleges that Tolley and Safe Haven have infringed upon these patents.  (*Id.* ¶¶ 55–59.)

## II.  DISCUSSION

### A.  Legal Standard for Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party."  *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014).  A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments."  *Giarratano*, 521 F.3d at 302.

### B.  Meridian's State-law Claims

#### 1.  Tolling under Virginia law

Tolley and Safe Haven argue that Meridian's state-law claims are untimely and that they do not relate back to and were not tolled by the filing of Safe Haven's original complaint in this case on June 25, 2021.  (Tolley & Safe Haven's Br. in Supp. of Mot. to Dismiss 14, Dkt. No. 69.)  Generally under Virginia law, a defendant "who pleads a counterclaim . . . shall be deemed to have brought [the] action at the time he files such pleading."  Va. Code § 8.01-233(A).  However, Virginia statute provides an exception to this rule: "[i]f the subject matter of the counterclaim . . . arises out of the same transaction or occurrence upon which the plaintiff's claim is based, the

statute of limitations with respect to [the counterclaim] shall be tolled by the commencement of the plaintiff's action." Va. Code § 8.01-233(B).

In cases discussing res judicata and joinder, the Supreme Court of Virginia has identified factors courts should look to in determining whether a claim arises out of the same "transaction or occurrence": whether the facts are "related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887, 897 (Va. 2017). In *Depp v. Heard*, 107 Va. Cir. 80, 90 (Va. Cir. Ct. 2021), a Virginia circuit court, in holding that the defendant's counterclaim was not tolled by the filing of the complaint, considered whether the plaintiff could have anticipated defending the defendant's counterclaim when originally filing his complaint. The court held that the common origin of the claims, a domestic violence restraining order, was *not* sufficient to achieve tolling under § 8.01-233(B). *Id.* The court found it significant that the instances giving rise to the claims took place on separate dates (December 2018 versus November 2018–June 2020), by different parties, and based upon different evidence to decide that the counterclaim was not tolled. *Id.* at 84–85, 90.

Conversely, the Fourth Circuit held in *Douglas v. McCarty*, 87 F. App'x 299, 301 (4th Cir. 2003), that the statute of limitations for a correctional officer's counterclaim for personal injuries resulting from an altercation with an inmate was tolled when the inmate initially filed suit. There, the original claim was a 42 U.S.C. § 1983 claim that arose from the *same altercation*. *Id.*

The court finds that Meridian's counterclaim does not arise out of the same transaction and occurrence as Safe Haven's original complaint. Safe Haven's claims against Meridian involve Safe Haven's patents issued between 2019 and 2021 and the ensuing actions Meridian

5

purportedly took to infringe upon these patents.  (*See* Am. Compl., Dkt. No. 11.)  Meridian's counterclaim, on the other hand, involves Tolley's founding of Safe Haven and departure from Meridian in 2013 and 2014, so the claims are certainly not "related in time."  *See Funny Guy*, 795 S.E.2d at 897.  In addition, the counterclaim arises from employment and business practice issues, not the patent issues set forth in Safe Haven's complaint, and Safe Haven and Tolley likely could not have anticipated defending a counterclaim involving these issues when filing its original complaint.  Moreover, Meridian added Tolley as a party to the counterclaim, but he was not a party to the original complaint.  For all of these reasons, the court finds Meridian's counterclaim does not fall under the Virginia Code § 8.01-233(A) tolling provision.

Virginia law offers another means of tolling for civil claims.  A claim may be tolled under Virginia Code § 8.01-229(D) if a plaintiff alleges a defendant "undertook an affirmative act designed or intended, directly or indirectly, to obstruct [the plaintiff's] right to file [its] action."  *Colgate v. Disthene Grp.*, *Inc.*, 86 Va. Cir. 218, 225 (Va. Cir. 2013) (citing *Newman v. Walker*, 618 S.E.2d 336, 338 (2005)).  "A defendant must intend to conceal the discovery of the cause of action by 'trick or artifice' and must have actually concealed it from the plaintiff for the statutory tolling to apply."  *Id.* at 225.  Allegations of "mere silence" are not sufficient; a plaintiff must allege "active concealment."  *Newman,* 618 S.E.2d at 338.  Tolley and Safe Haven argue, and Meridian does not contest, that they took no affirmative action to obstruct Meridian's right to file its action or conceal the discovery of its causes of action.  (Br. in Supp. 17.)  Therefore, the court finds that Meridian's counterclaim was not tolled under Virginia Code § 8.01-229(D).

Since Meridian's counterclaim was not tolled under Virginia law when Safe Haven filed its original complaint, Meridian "shall be deemed to have brought [the] action at the time" it filed its counterclaim: May 26, 2023.  Va. Code § 8.01-233(A).  The court will now address the

statutes of limitations for the state-law claims in Meridian's counterclaim.  Central to the discussion of the statutes of limitations for the claims here is whether the "discovery rule" applies.  Virginia Code § 8.01-249 presents a limited list of causes of action that accrue upon the *discovery* of a breach and not the date of the breach itself; this includes claims of fraud or mistake, personal injury, and products liability, among others.  As explained in detail below, the court finds that the discovery rule does not apply to Counts I through III but does to Count IV.  The court then addresses the other grounds raised for dismissal of Meridian's state-law claims.

### 2.   Count I: Breach of fiduciary duty

Meridian claims that, both during and after his employment, Tolley violated his fiduciary duties to "maintain[] the confidentiality of Meridian's trade secrets, proprietary process information, and confidential business information, and not divert[] existing or potential Meridian customers to others or himself without Meridian's knowledge and express authorization."  (Countercl. ¶ 26.)  Meridian asserts that Tolley promoted "his own interests and Safe Haven's interests over those of Meridian" and took direct actions to compete against Meridian while still its employee.  (*Id.* ¶¶ 58, 59.)

In Virginia, an employee "owes a fiduciary duty of loyalty to his employer during his employment . . . . Subsumed within this general duty of loyalty is the more specific duty that the employee not compete with his employer during his employment."  *Adnet, Inc. v. Soni,* 66 F.4th 510 (4th Cir. 2023) (citing *Williams v. Dominion Tech. Partners, LLC,* 576 S.E.2d 752, 757 (Va. 2003)).  Upon termination of the employment relationship, an employee is generally free to compete with their former employer. *See Peace v. Conway,* 435 S.E.2d 133, 135 (Va. 1993).  Virginia courts have found that the fiduciary duty does not apply to most post-termination actions by a former employee, particularly where, as here, the parties did not have a non-

7

competition agreement.[2]  However, as Meridian notes, an employee does continue to owe his former employer a fiduciary duty under *limited* circumstances, such as when the former employee engages in business transactions founded on information gathered during his employment.  *Today Homes, Inc. v. Williams*, 634 S.E.2d 737, 744 (Va. 2006) (citations omitted).  Meridian claims that Tolley gathered Meridian's customer information during his employment and used it to engage in business transactions with Meridian's then-current and prospective customers after he left Meridian, thereby potentially breaching his fiduciary duty of loyalty to Meridian.  (Countercl. ¶¶ 58–61.)

The statute of limitations for a breach of fiduciary duty claim is two years, and a cause of action for breach of fiduciary duty accrues *at the time of the breach.  See Colgate*, 86 Va. Cir. at 227–28.  While the Fourth Circuit held in *Int'l Surplus Lines Ins. Co. v. Marsh & McLennan, Inc.*, 838 F.2d 124, 129 (4th Cir. 1988), that the discovery rule *did* apply to breaches of fiduciary duty, state and federal courts in Virginia have since found this ruling to be inconsistent with Virginia law.[3]  "[T]he Virginia Code explicitly lays out the causes of action subject to the discovery rule, and breach of fiduciary duty is not an enumerated category.  Virginia courts have repudiated the discovery rule for breach of fiduciary duty claims, and the majority of the federal courts in Virginia have followed suit."  *Colgate,* 86 Va. Cir. at 227 (citing *Jones v. Shooshan*, 855 F. Supp. 2d 594, 602–03 (E.D. Va. 2012)).  *See also Professionals I, Inc. v. Pathak*, 47 Va.

---

[2]  *See Deepwood Veterinary Clinic, Inc. v. Sabo,* 45 Va. Cir. 508, 508–09 (Va. Cir. Ct. 1998) ("The Court finds that the actions of Dr. Sabo post-termination neither tortiously interfered with a contract nor breached any existing fiduciary duty.  The solicitation of customers through use of a list compiled by memory and competition with the former employer after termination of the agency are not actionable absent a covenant not to compete or the use of improper methods"); *Peace,* 435 S.E.2d at 135 ("[I]t is not unusual in the business world for an employee to leave his employment and start a competing business.  When this occurs, inevitably customers of the former employer will desire to continue to deal with the former employee in the new business.  Therefore, had Conway desired to prevent Peace and Dickens from soliciting his customers, he could have required his employees to execute covenants not to compete.").

[3]  Furthermore, the *Int'l Surplus Lines* court notably described the facts before it as "rather unusual" and ultimately concluded that the claim was time-barred, despite application of the discovery rule.  838 F.2d at 129.

Cir. 476, 480 (Va. Cir. Ct. 1998) ("the breach of fiduciary duty claim is not one of the statutorily enumerated causes of action subject to the 'discovery rule.'"); *Smith v. CNA Fin. Corp.*, Civil Action No. 7:01-cv-00653, 2003 U.S. Dist. LEXIS 28240, at *22–23 (W.D. Va. Nov. 26, 2003) ("[b]reach of fiduciary duty is clearly not one of the enumerated causes of action subject to the discovery rule . . . .  By exclusion, the Virginia legislature has decided that the statute of limitations for breach of fiduciary duty is triggered on the accrual date.").  In light of these developments in the caselaw, the court finds that the "discovery rule" of Virginia Code § 8.01-249 does not apply to Count I and the statute of limitations accrued at the time of the breach.

Meridian claims that Tolley began soliciting Meridian's then-current and prospective customers and using Meridian's purported trade secrets "[i]mmediately upon forming Safe Haven" in 2013.  (Countercl. ¶ 41.)  Meridian goes on to allege that "Tolley owed, and continues to owe, Meridian fiduciary duties that include, but are not limited to, the duties of loyalty and good faith." (*Id.* ¶ 57.)  Yet neither Meridian nor the court has identified a case wherein a fiduciary duty was found to be *ongoing* nearly ten years after the termination of the employment relationship.  The court finds that Meridian's cause of action for breach of fiduciary duty accrued at the time of the purported breach in 2013.  Therefore, the statute of limitations for Count I lapsed in 2015, and Count I is time-barred.

### 3.  Count II: Interference with existing and prospective contracts and prospective business advantage

Meridian next claims that Tolley and Safe Haven diverted Meridian's then-current and prospective customers to Safe Haven, which caused these customers to terminate their contracts with Meridian.  (*Id.* ¶¶ 67–68.)  The statute of limitations for tortious interference with existing and prospective contracts and prospective business advantage is five years under Virginia law. The Supreme Court of Virginia explicitly confirmed this in *Dunlap v. Cottman Transmission*

*Sys., LLC*, 754 S.E.2d 313 (Va. 2014), after the Fourth Circuit certified the question of what

statute of limitations applies to these torts to the state court.  The Supreme Court of Virginia

explained that these torts involve injury to *property*, to which Virginia law applies a five-year

statute of limitations.  *See also Dunlap v. Cottman Transmissions Sys., LLC*, 576 F. App'x 225

(4th Cir. 2014) (applying the five-year limitations period).

The Supreme Court of Virginia recently held that the statute of limitations for injury to

property under Virginia Code § 8.01-243(B) accrues *when the injury occurs*:

> The general principle, well recognized in Virginia law, deems the
> accrual of a cause of action for "injury to property," [] to take place
> when the first measurable damage occurs.  *See* Code § 8.01-230
> (providing that "the right of action shall be deemed to accrue and
> the prescribed limitation period shall begin to run from the date the
> injury is sustained in the case of . . . damage to property");
> *Southern Ry. v. Leake* , 140 Va. 438, 441, 125 S.E. 314, 315 (1924)
> ("Whenever any injury, however slight it may be, is complete . . .
> the cause of action then accrues."); *Virginia Hot Springs Co. v.
> McCray*, 106 Va. 461, 470–71, 56 S.E. 216, 220 (1907) (finding
> that that the statute of limitations begins to run once the property
> has been damaged).  At that point, the limitation period begins to
> run.  Subsequent, compounding or aggravating damage—if
> attributable to the original instrumentality or human agency—does
> not restart a new limitation period for each increment of additional
> damage.  *See* Kent Sinclair, *Sinclair on Virginia Remedies* § 65–
> 4[C], at 65–21 (5th ed. 2016).

*Forest Lakes Cmty. Ass'n, Inc. v. United Land Corp. of Am.*, 795 S.E.2d 875, 881 (2017).

Meridian, however, argues that the allegations in Count 2, as well as those in its other claims, do

not fall under this accrual standard because the alleged wrongful acts behind each of these claims

are *ongoing*.  In support, Meridian invokes the concept of "continuing harm:" "[w]hen a

defendant commits multiple wrongful acts, a separate statute of limitations attaches to each

wrongful act.  Consequently, [the wrongful acts] alleged to have been committed by the

defendant that fall within the limitations period are still actionable for damages."  *East-West,*

*LLC v. Rahman*, 896 F. Supp. 2d 488, 505 (E.D. Va. 2012). *See also Perkins v. Nash,* 697 F. Supp. 527, 532 (D.D.C. 1988) ("As long as a defendant keeps committing wrongful acts resulting in injury, plaintiff will be able to bring some cause of action within the statutory period dating from such wrongs."); *Beyond Pesticides v. Monsanto Co.*, 311 F. Supp. 3d 82, 87 (D.D.C. 2018) ("[T]he challenged conduct was not the result of one incessant violation, but rather was a series of repeated violations of an identical nature.") (internal citations omitted).

However, none of the cases Meridian references involves *Virginia injury to property* claims. *East-West* involved federal and Virginia law claims for trademark infringement and unfair competition to which the court applied the two-year statute of limitations for Virginia *personal injury* claims. *Perkins* involved fraud claims under District of Columbia law, while *Monsanto* dealt with the District of Columbia Consumer Protection Procedures Act. The Supreme Court of Virginia explicitly stated in *Forest Lakes* that, for injuries to *property*, "[s]ubsequent, compounding or aggravating damage—if attributable to the original instrumentality or human agency—does not restart a new limitation period for each increment of additional damage." 795 S.E.2d at 881. Here, whatever damage Meridian alleges to have suffered is "attributable to the original instrumentality or human agency" of the interference, that is, Tolley's purported diversion of Meridian's customers. *See id.* Meridian claims that Tolley immediately began to solicit Meridian's customers upon the founding of Safe Haven in 2013 and gained knowledge about the customers *during* his employment with Meridian, which ended in 2014. (Countercl. ¶¶ 35–36, 41.) Moreover, Meridian does not claim that Tolley and Safe Haven *continue* to interfere with Meridian's contracts and business expectancies as it does in other claims, just that it "has suffered and will continue to suffer harm and damages" from

Tolley and Safe Haven's past interference.[4]  (*Id.* ¶ 62.)  Therefore, the statute of limitations for Meridian's claim of interference with existing and prospective contracts and business advantage accrued when the first measurable damage occurred, which Meridian alleges to be 2013, meaning the statute of limitations lapsed in 2019.  (*Id.* ¶ 41.)  Count II is time-barred and will therefore be dismissed.

### 4.  **Count III: Business conspiracy**

In Count III, Meridian claims that Safe Haven and Tolley "coordinated to unlawfully and unethically misappropriate Meridian's proprietary bird behavior assessment techniques and methods, . . . acquired knowledge of Meridian's existing customers to unlawfully and unethically divert Meridian's existing and potential customers to Safe Haven, and to interfere with Meridian's lawful business expectancies by stealing Meridian's business . . . ."  (*Id.* ¶ 82.)  The Virginia Code criminalizes business conspiracy in Virginia Code § 18.2-499, making it a Class 1 misdemeanor to "conspire to willfully and maliciously injur[e] another in his reputation, trade, business or profession by any means whatever."  Virginia Code § 18.2-500 allows for civil relief to those who fall victim to such conduct.  Therefore, in actions for common law civil conspiracy and statutory business conspiracy, a plaintiff must identify: "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to plaintiff."  *Dunlap*, 754 S.E.2d at 317.  Actions for business conspiracy must allege that a plaintiff sustained damages as a result of an act that is itself wrongful or tortious.  Va. Code §§ 18.2-499, 18.2-500.  The Supreme Court of Virginia has explicitly found that tortious interference with contract and business expectancy "qualif[ies] as an unlawful act for purposes of a business conspiracy claim."  *Dunlap*, 754 S.E.2d at 321.

---

[4] Indeed, Meridian mainly uses past tense to describe Tolley and Safe Haven's alleged acts of interference in this claim, unlike in its other claims.

The statute of limitations for business conspiracy in Virginia is five years.  Va. Code § 8.01-243; *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 543 (4th Cir. 1997).  Under Virginia law, the cause of action for common law conspiracy or statutory business conspiracy does not accrue until the plaintiff suffers injury sufficient to give rise to the underlying tort claim; "'only the slightest injury is required to start the running of the limitations period.'"  *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 93 (4th Cir. 2019) (quoting *Int'l Surplus Lines*, 838 F.2d at 129).  However, "[i]f the wrongful act is of a permanent nature and one that produces all the damages that can ever result from it, [then] the entire damages must be recovered in one action and the statute of limitations begins to run from the date of the wrongful act.  Conversely, when wrongful acts are not continuous but occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action."  *Hampton Rds. Sanitation Dist. v. McDonnell*, 360 S.E.2d 841, 843 (Va. 1987) (citations omitted); *see also Union Labor Life Ins. Co. v. Sheet Metal Workers Nat'l Health Plan,* No. 90-2728, 1991 WL 212232, at *15 (D.D.C. Sept. 30, 1991) ("[W]rongful acts or breaches of duty which occur in distinct intervals or installments, as opposed to being continuous, cause distinct and severable injuries.  Consequently, each breach gives rise to new and separate causes of action and the statutes of limitations . . . run separately for each.").

Meridian, however, does not claim that Tolley and Safe Haven committed business conspiracy in distinct "intervals" or "installments."  It describes Tolley and Safe Haven's conduct as "ongoing" and that Meridian "has been and will continue to be damaged" by their alleged conspiracy.  (Countercl. ¶ 85.)  Throughout the counterclaim, Meridian repeatedly describes Tolley and Safe Haven's purported wrongful conduct as "continuing" and "ongoing." (*See, e.g.*, *id.* ¶¶ 43, 58, 98, 112.)  Courts have explicitly excluded "continuous" harm from the

business conspiracy separate occurrence rule.  *See Hampton Rds.*, 360 S.E.2d at 843.  Moreover, the Supreme Court of Virginia has found that the "origin" of the Virginia business conspiracy statutes "establishes that they apply to *business and property interests . . . .*"  *Andrews v. Ring*, 585 S.E.2d 780, 784 (Va. 2003) (emphasis added).  As discussed above, the statute of limitations for claims of injury to property does not allow for "continuous" breaches and instead accrues when the injury occurs.  *See Forest Lakes*, 795 S.E.2d at 881.

For these reasons, the court finds that the statute of limitations for Count III accrued in 2013 or 2014 when Meridian alleges it first suffered injury from Tolley interfering with Meridian's contracts and business expectancies, and it lapsed in 2018 or 2019.  Count III is therefore time-barred.

**5.  Count V: Virginia Uniform Trade Secrets Act**

Meridian alleges that Tolley and Safe Haven misappropriated its trade secrets, including Meridian's non-lethal process for removing birds, bird behavior assessment methods, and customer information, in violation of VUTSA.  (Countercl. ¶ 102.)  Under VUTSA, Virginia Code § 59.1-336 *et seq*, a person or entity misappropriates trade secrets if they acquire the secrets while knowing or having reason to know that the secret was acquired by improper means. Va. Code § 59.1-336.  Misappropriation also includes the disclosure or use of trade secrets without consent by someone who used improper means to acquire knowledge of the trade secret. *Id.*

*a.  Statute of limitations*

The statute of limitations for a claim of misappropriation of trade secrets under VUTSA is three years and includes a discovery rule: "[a]n action for misappropriation shall be brought within three years after the misappropriation is discovered or by the exercise of reasonable

14

diligence should have been discovered." Va. Code § 59.1-340. The statute of limitations accrues when a plaintiff should have discovered the misappropriation, even if some further investigation was required to understand and discover the misappropriation. *Thousand Oaks Barrel Co. v. Deep S. Barrels LLC*, 241 F. Supp. 3d 708, 723 (E.D. Va. 2017).

Virginia courts are generally hesitant to address discovery rule issues in a motion to dismiss and often do so "only if all the facts necessary for resolution of the motion appear on the face of the complaint or are otherwise indisputable." *McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 807 (E.D. Va. 2017). For example, in *Thousand Oaks*, the plaintiff stated that it learned that a third party had contacted the company's supplier in 2010 but did not realize that the plaintiff's former employee was the one who shared the supplier's information and other trade secrets with the third party until 2014; the plaintiff filed its original suit in 2016. 241 F. Supp. 3d at 723. The court found that the plaintiff may not have "connected the dots at the time the third party contacted the supplier, [but] the plaintiff could have taken reasonable steps to learn how the third party discovered the supplier's information." *Id.* The court ultimately dismissed the VUTSA claim based on its finding that the statute of limitations accrued in 2010. *Id.*

Here, Meridian alleges that the issuance of Tolley's first patent on April 19, 2019, was "the first public disclosure that Safe Haven was performing bird removal services for Safe Haven's customers by utilizing a non-lethal mist netting process." (Countercl. ¶ 40.) Meridian does *not* say, however, that this was *Meridian's* first notice that Tolley and Safe Haven were utilizing the mist netting process. Meridian also does not establish when or how it learned that Tolley and Safe Haven were using its bird behavior assessment methods and customer information, the other trade secrets Meridian alleges Tolley and Safe Haven misappropriated.

Unlike the plaintiff in *Thousand Oaks* who gave the specific years of when they discovered acts of misappropriation, Meridian does not identify the exact dates it learned of Tolley and Safe Haven's purported misappropriations.  Courts have noted that the issue of when a cause of action was or should have been discovered "is a question of fact 'not measured by any absolute standard, but depending on the relative facts of the special case." *Jones*, 855 F. Supp. 2d at 604. In cases where the question "of when precisely plaintiff discovered, or in the exercise of due diligence reasonably should have discovered" a possible misappropriation or other tortious behavior is unclear, courts in Virginia "generally have required questions of this sort to be reserved for the jury." *McPike*, 280 F. Supp. 3d at 807.  Perhaps, after discovery, the answer to that question will be clear.  At this stage of the case, however, dismissal of this claim on limitations grounds is not appropriate.

   *b. Plausibility of VUTSA claim*

   The court finds that Meridian has otherwise plausibly pled a claim under VUTSA.  To state a claim for misappropriation of trade secrets under VUTSA, "the plaintiff must establish two elements: (1) that the defendant acquired, disclosed, or used a trade secret developed by the plaintiff through improper means (namely, without express or implied consent); and (2) that the defendant knew or had reason to know that its knowledge of the trade secret was either acquired under circumstances giving rise to a duty to maintain its secrecy or derived through a person owing such a duty to the plaintiff." *Trident Prod. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 780 (E.D. Va. 2012), *aff'd,* 505 F. App'x 242 (4th Cir. 2013). VUTSA defines a trade secret as:

> [I]nformation, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that: 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain

economic value from its disclosure or use, and 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code § 59.1-336.  "The determination of whether a trade secret exists is generally a question of fact to be determined 'from the greater weight of the evidence.'"  *Trident*, 859 F. Supp. 2d at 778 (quoting *MicroStrategy, Inc. v. Li*, 601 S.E.2d 580, 588 (Va. 2004)).  "The case law is clear that just about anything can constitute a trade secret under the right set of facts," so long as it meets the above qualifications.  *Id.* (quoting *MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004)).

Tolley and Safe Haven argue that Meridian's descriptions of the trade secrets at issue here are "impermissibly vague" and not pled with sufficient particularity under the *Twombly*/*Iqbal* standard.  (Br. in Supp. 27.)  They take issue with Meridian describing the trade secrets as involving "innovative techniques and processes" and "analyzing specific behavior patterns[,]" among other more generalized descriptions.  (Countercl. ¶¶ 27–28.)  However, courts in this district court have rejected a heightened pleading standard for descriptions of trade secrets under VUTSA (as well as under the DTSA).  As Magistrate Judge Hoppe has previously observed,

> While I understand Defendants' rationale for more specific or detailed factual allegations describing the purported trade secrets at issue in this case, I am more persuaded by decisions from district judges in the Western District of Virginia concluding that a complaint asserting a claim for misappropriation of trade secrets under either the DTSA or the VUTSA "must plead only enough facts to state a claim to relief that is plausible on its face."

*Bonumose Biochem, LLC v. Yi-Heng Zhang*, No. 3:17-cv-00033, 2018 WL 10069553, at *8 (W.D. Va. May 21, 2018) (quoting *Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 653 (W.D. Va. 2017) (internal citations omitted), *report and recommendation adopted*, No. 3:17-cv-00033, 2018 WL 10068672 (W.D. Va. June 11, 2018).  The court finds that Meridian has sufficiently described the trade secrets at issue to state a claim under VUTSA.  Meridian clearly states on the

face of its complaint that its capture systems, behavior analysis techniques, and customer information are proprietary and not generally known or easily ascertainable to other persons.[5] (Countercl. ¶ 103.)  The court will therefore decline to dismiss Meridian's VUTSA claim based on vagueness.

For all of these reasons, the court will deny Tolley and Safe Haven's motion to dismiss Count V.

## C. Meridian's Federal Claim—Count IV: Defend Trade Secrets Act

Meridian also brings a claim under the federal DTSA alleging that Tolley and Safe Haven misappropriated its trade secrets, including Meridian's non-lethal process for removing birds, bird behavior assessment methods, and customer information.

### 1. Statute of limitations

The statute of limitations for a violation of the DTSA is three years and is subject to a discovery rule.  18 USC § 1836(d) ("A civil action under subsection (b) may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered.").  Courts' application of the DTSA's discovery rule to dispositive motions is analogous to Virginia courts' treatment of the VUTSA discovery rule: "[a] court may determine as a matter of law when a claim should have been discovered only when 'uncontroverted evidence irrefutably demonstrates when plaintiff discovered or should have discovered the fraudulent conduct.'"  *United Res. 1988-I Drilling & Completion Program, L.P. v. Avalon Expl.,*

---

[5] Tolley and Safe Haven also argue that Meridian's customer list is not a trade secret under VUTSA and the DTSA because "[c]ustomer [i]nformation that is over nine years old lacks economic value."  (Br. in Supp. 28.)  Meridian, however, asserts that the customer information "is not known outside Meridian" and "is valuable."  (Countercl. ¶ 103.)  The court finds that this description is sufficient to state a claim under VUTSA as well as the DTSA.

*Inc.*, 1993 WL 17464, at *5 (S.D.N.Y. Jan. 21, 1993) (quoting *Huang v. Sentinel Gov't Sec.*, 709 F.Supp. 1290, 1301 (S.D.N.Y. 1989) (lack of uncontroverted evidence and possibility of drawing conflicting inferences as to plaintiff's discovery of fraud necessitated denial of summary judgment). *See also Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604 (N.D. Ill. 2023) (lack of clarity as to when plaintiff knew or should have known about misappropriation precluded dismissal of DTSA claim based on statute of limitations). As discussed in depth above, Meridian does not specify when or how it learned that Tolley and Safe Haven were allegedly misappropriating its trade secrets. The court will therefore decline to dismiss Meridian's DTSA claim based on the statute of limitations.

### 2. Plausibility of DTSA claim

To state a claim under the DTSA, "a plaintiff must allege (1) the existence of a trade secret as defined in the statute; (2) a nexus between the secret and interstate or foreign commerce; and (3) misappropriation of such trade secret." *Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 853 (E.D. Va. 2018). Tolley and Safe Haven argue that Meridian's DTSA claim should be dismissed because Meridian has not sufficiently described the trade secrets at issue. The term "trade secret" under the DTSA is defined as,

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information . . .

18 U.S.C. § 1839(3).  As discussed above in the context of the VUTSA, this court will adopt the standard other courts in this district have used to assess the sufficiency of a trade secret's description under the DTSA.  Again, "a complaint asserting a claim for misappropriation of trade secrets under [] the DTSA . . . 'must plead only enough facts to state a claim to relief that is plausible on its face.'"  *Hawkins,* 301 F. Supp. 3d 650, 653 (quoting *Twombly*, 550 U.S. at 570).  For the same reasons stated above as to the VUTSA claim, the court finds here that Meridian has described the trade secrets at issue in sufficient enough detail to state a claim under the DTSA.  The court will therefore decline to dismiss Meridian's DTSA claim based on vagueness.

Tolley and Safe Haven also argue that *none* of Meridian's trade secrets are "secret" under the DTSA anymore since Meridian made the secrets publicly available when it filed its patents.  (Br. in Supp. 26.)  Courts have indeed found that patent filings can extinguish a trade secret's status as "secret" in some circumstances*.  See, e.g.*, *Attia v. Google LLC*, 983 F.3d 420, 425–26 (9th Cir. 2020) ("it appears to us to be well-settled that publication of information in a patent application eliminates any trade secrecy."); *Terracino v. Trimaco, Inc*., No. 5:22-CV-015-FL, 2023 WL 2656753, at *7 (E.D.N.C. Mar. 27, 2023) ("[w]here all the proprietary information plaintiffs have alleged is publicly available in their patent, their claim under the Defend Trade Secrets Act fails.").  However, the patents in those cases disclosed the *entirety* of the trade secrets at issue in the suit.  Here, Tolley and Safe Haven allege only that Meridian's patents disclosed the trade secrets surrounding the bird capture system; therefore, the patents would not have any impact on the trade secret status of the customer information or the behavior analysis methods.  (Br. in Supp. 26.)  Moreover, Meridian explicitly describes its patents as "covering certain non-proprietary aspects" of the bird capture systems.  (Countercl. ¶ 51.)  Taking all alleged facts as true and construing the counterclaim in the light most favorable to Meridian, the

court infers this statement to mean that the public filing of the patents did not contain the trade secrets implicated here and thus did not impact these trade secrets' "secrecy." The court will therefore decline to dismiss Meridian's DTSA claims based on disclosures made in Meridian's patent filings.

For all of these reasons, the court will deny Tolley and Safe Haven's motion to dismiss Count IV.

**D.  Injunctive Relief**

As part of its requested remedies, Meridian asks the court to order Tolley and Safe Haven to turn over all materials containing Meridian's trade secrets, to enjoin them from using Meridian's trade secrets in their business, and to refrain from any business dealings with Meridian's then-current and prospective customers that Tolley purportedly improperly solicited. (Countercl. 48.)  Tolley and Safe Haven have moved for dismissal of Meridian's requests for injunctive relief.  (Br. in Supp. 32.)  As the court noted during the hearing on this motion, "[a] motion to dismiss is not the appropriate time to determine the proper scope of any potential relief." *U.S. v. Sea Bay Dev. Corp.*, No. 2:06-cv-624, 2007 WL 1378544, at *3 (E.D. Va. May 8, 2007).  Rule 12(b)(6) motions concern the sufficiency of *claims*, not requested relief.  The court will therefore decline to dismiss Meridian's requests for injunctive relief.

III.  CONCLUSION

For the foregoing reasons, the court will grant Safe Haven and Tolley's motion to dismiss

as to Counts I, II, and III, and will deny it as to Counts IV and V and Meridian's requests for injunctive relief.  The court will enter an appropriate order.

      Entered: February 9, 2024.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge